1  John L. Smaha, Esq., Bar No. 95855
   Gustavo E. Bravo
2  **SMAHA LAW GROUP**
   7860 Mission Center Court, Suite 100
3  San Diego, California 92108
   Telephone:   (619) 688-1557
4  Facsimile:   (619) 688-1558

5  Attorneys for Debtor, Jonathan Mitchell Shiff

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>SARGENT RANCH, LLC,<br><br><br>Debtor. | CASE NO. 10-00046-PB11<br><br>Chapter 11<br><br>MOTION OF DEBTOR-IN-POSSESSION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS, FOR LEAVE TO WITHHOLD AN ADMINISTRATIVE CARVE OUT OF 5%, TO PAY THE COSTS OF SALE AND TO MAKE DISTRIBUTIONS TO SECURED CREDITORS<br><br>Date:    June 28, 2010<br>Time:    10:00 a.m.<br>Dept.:   4<br>Judge:   Hon. Peter W. Bowie |

COMES NOW Sargent Ranch, LLC, the Debtor and Debtor-In-Possession (the "Debtor") in the above captioned Chapter 11 case, and moves this Court for an order, pursuant to 11 U.S.C. § 363, to sell real property which is property of this Chapter 11 estate, free and clear of liens, for leave to pay all escrow and costs related with the purchase, to carve out 5% of the purchase price for administrative expenses of the Debtor's estate and to pay secured creditors from the proceeds of the sale.

This motion is based on the following:

1. The real property subject to this motion is a portion of real property best described as APN# 841-36-013, located in the county of Santa Clara, in the city of Gilroy, California (the "Subject Property"). The Subject Property is approximately 120 acres. The Debtor shall retain and record a Conservation Easement for habitat preservation and/or mitigation credits, the exact area and acreage of which shall be determined by the Initial Study/CEQA review and Debtor shall also retain one half (½) interest in the water rights to the Subject Property. The easement and water rights shall be freely transferable by the Debtor to third parties.

2. As a result of Debtors's efforts, the Debtor has received a post-petition offer to purchase the Subject Property from third party, The James Group. The purchaser is a third-party, arms length purchaser which seeks to purchase the Subject Property free of all liens and claims. True and correct copies of the offer and acceptance are attached to the declaration of Wayne F. Pierce as Exhibit "A" and are incorporated herein by this reference. The essential terms of the purchase are:

    a. Contained in a Purchase and Sale Agreement and Joint Escrow Instructions (Attached as Exhibit A to the declaration of Wayne F. Pierce). The Purchase Price is $1,200,000.00;

    b. The offer is being made as an all cash offer with an initial deposit made to escrow in the amount of $10,000 upon the opening of escrow and an additional $90,000 deposit into the escrow account within five days after the expiration of the Feasibility Period as defined in the Purchase Agreement'

    c. No loan contingency applies to the sale as the offer is all cash;

    d. The Feasibility Period shall be 60 days, extending from the Effective Date or Court approval Date, whichever is later, until no less than 60 days from that date;

///

    e.    The Effective Date is the date on which the Agreement is executed by all parties to the Agreement as approved by the Bankruptcy Court in the above titled case.

    f.    The Conditional Use Permit Approval Date shall mean the date (i) the County of Santa Clara formally approves a Conditional Use Permit and Architectural and Site review on the Property, with conditions of approval acceptable to Buyer; and (ii) all appeal and challenge periods to the Use Permit and environmental review approval have expired without any appeal or challenge being filed, or, if an appeal or challenge is filed, all appeals and challenges have been fully and finally resolved in a manner acceptable to Buyer, provided that someone has not spoken or written against the Project to preserve the right to appeal, otherwise, only (i) shall apply;

    g.    The Project is a Conditional Use Permit, Architectural & Site approvals, and CEQA environmental review with the County of Santa Clara for a 15 MW Solar PV power station. The Buyer shall bear all costs of obtaining the Use Permit, Architectural & Site approvals and CEQA environmental review at its own cost, separate and apart from the purchase price; and,

    h.    As costs and expenses of the sale, the Debtor has agreed to pay one half of all Escrow fees and escrow costs, Debtor's prorated share of Property Taxes, and the documentary transfer tax.

3.    The known liens on the Subject Property, and the estimated amounts due to each creditor are as follows:

    a.    First Blackhawk Financial First Deed of Trust    $69,719,418.00
    b.    First Blackhawk Financial Second Deed of Trust $72,805,613.56
    c.    First Blackhawk Financial Third Deed of Trust    $14,586,224.21

These claim amounts are taken from the declaration of Rear Admiral Burton O.

1  Benson, (Ret.). The Debtor has not accepted these amounts and reserves the right to
2  challenge these amounts by objections to claims or other means. One of the problems with
3  determining the amounts owed is that each of the above deeds of trust has a number of
4  different individual creditors. Several creditors, including Admiral Benson, pretend to speak
5  on behalf of all creditors and make alleged claims on others' behalf in different amounts than
6  several other creditors have made. As such, the Debtor has received two, or as many three,
7  different amounts for a number of the secured claims. The issue is one that must eventually
8  be resolved. However, for the purposes of this motion, the Debtor provides the following
9  amounts as an estimate of the secured claims against the Subject Property.

10     4.   The sale of the Subject Property is clearly not enough to pay the outstanding
11 liens on the Subject Property. By separate motion, being filed concurrently herewith, the
12 Debtor seeks to establish release prices for the various other real properties that the Debtor
13 owns and controls. The aggregate value of these properties is well in excess of the
14 $157,111,255.77 secured claims against the Subject Property and the Debtor's other real
15 properties. The current motion to sell is intended as the first of several sales of the Debtor's
16 real properties that shall towards paying off the secured claims and, eventually, paying off
17 all creditors of the Debtor's estate. The Debtor proposes to use the proceeds of the sale, net
18 of the costs of sale and an administrative carve out of 5% requested herein below, will go
19 directly to Debtor's secured creditors to begin paying down the $157,111,255.77. Debtor
20 believes that the first deed of trust holders should receive the net proceeds of the sale on a
21 pro rata basis.

22     5.   Debtor requests an administrative carve-out of 5% of the sales price. Carve-
23 outs are often set up in postpetition lending orders issued by the court under Section 364.
24 Section 328(a) also permits "carve-outs" from the proceeds of post-petition financing.[1] A
25 carve-out implies that funds set aside for administrative creditors, including the Debtor's

---

[1] Section 363(c)(1) also provides authority to the court as the provision in the Bankruptcy Code that grants interim payments a super-priority.

professionals, cannot under any circumstances be obtained by competing creditors. (See, e.g., *In re Insilco Technologies, Inc.* (Bankr. D. Del. 2003) 291 B.R. 628; *In re Guterl Special Steel Corp.* (Bankr. W.D. Pa. 2004) 316 B.R. 843; *In re Evanston Beauty Supply, Inc.*, (Bankr. N.D. Ill. 1992) 136 B.R. 171; *In re Ames Dep't Stores, Inc.*, (Bankr. S.D.N.Y. 1990) 115 B.R. 34.)  The use of carve-outs is a common practice that exists among postpetition lenders and professionals in proceedings under Chapter 11 of the Code. (See generally Craig B. Cooper, The Priority of Postpetition Retainers, Carve-out, and Interim Compensation Under the Bankruptcy Code, 15 Cardozo L. Rev. 2337; see also James S. Cole, The "Carve Out" from Liens and Priorities to Guarantee Payment of Professional Fees in Chapter 11, 1993 Det. C.L. Rev. 1499.)

One of the powers granted to the trustee, or the DIP, in a Chapter 11 case is the authority to operate the debtor's business. (11 U.S.C. § 1108 ["Unless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business."].).  As most reorganizing businesses have inadequate cash flow to meet daily financial obligations, a DIP usually needs to obtain postpetition financing soon after bankruptcy proceedings commence. (See *Ames*, supra, 115 B.R. at 36 ["It is given that most successful reorganizations require the debtor-in-possession to obtain new financing simultaneously with or soon after the commencement of the Chapter 11 case."].)

A carve-out is simply a portion of the loan or sale proceeds that is exclusively reserved to pay administrative creditors.  The amount of the carve-out is typically a fixed amount sometimes set in proportion to the total facility granted by the lender or total proceeds from the sale. (See, e.g., *Ames*, supra, 115 B.R. at 41 [2% ($5 million) of the total loan amount ($250 million) was carved-out to pay professionals].) Many courts have, in fact, insisted upon the use of a carve-out. (See, e.g., *Evanston Beauty Supply*, supra., 136 B.R. 171; *Ames*, supra, 115 B.R. 34.) An analysis of the specific situations in which bankruptcy courts have approved the use of carve-outs demonstrates the need for them.

The court in *In re Ames Department Stores, Inc.*, for instance, approved a carve-out to pay professional fees out of the proceeds of a postpetition loan.  The debtors made a

motion for an order approving $250 million of postpetition financing under section 364©) of the Code. After unsuccessful negotiations with four lending institutions, the debtors finally entered into an agreement with Chemical Bank for $250 million of various loan facilities. (*Ames*, supra, 115 B.R. at 35.) The original clauses in the proposed agreement with Chemical Bank did not include any carve-out provisions. The court insisted on a modification of the original agreement to include a carve-out of $5 million for professional fees. (*Id.* at 41.) The court held that "it has been . . . its uniform practice . . . to insist on a carve out from a super-priority status and post-petition lien in a reasonable amount designed to provide for payment of the fees of debtor's and the committees' counsel and possible trustee's counsel in order to preserve the adversary system." (*Id.* at 38.) It then delineated numerous benefits of using carve-outs to pay professional fees and described problems that arise in their absence. (*Id.* at 38-40.)

The court in *Ames* stated that a clause without a carve-out provision is exactly the type of clause that causes concern. First, such clauses "effectively preclude or limit the ability of parties in interest to seek appointment ... of a trustee or examiner" to uncover mismanagement of the debtor's affairs. (*Ames,* supra, 115 B.R. at 40.) Second, the court held that a failure to provide a reasonable sum for professionals has, in other cases before the court, left estates, creditors' committees and trustees without the assistance of counsel and the court without the adversary system contemplated by Congress in 1978 when it, in enacting the Bankruptcy Code, recast the role of bankruptcy judges principally to one of resolving disputes. (*Id.*) Third, the court held that absent the protection of a carve-out, "the collective rights and expectations of all parties-in-interest are sorely prejudiced." (*Id.* at 38.)

Further, payment to professionals by way of a postpetition retainer under section 328(a) is protected from secured creditors with failed adequate protection and, therefore, not deemed property of the estate. (See *In re Bread & Chocolate, Inc.*, (Bankr. D.D.C. 1992) 148 B.R. 81, 82 [holding that under certain circumstances retainers permitted under Section 328(a) are property of the attorney].) Although carve-outs are property of the estate, there is no reason why payments to administrative creditors by way of a carve-out should be treated

any differently than payments by way of a Section 328(a) post-petition retainer.[2] Therefore, even if cash collateral is property of the estate, carve-outs are simply post-petition retainers which are specifically authorized by Section 328(a) of the Code. Since carve-outs and post-petition retainers are essentially the same, they both should be subject to the same priority scheme.

Here the carve out requested is for $60,000 ($1,200,000 x .05 = $60,000). This carve out would be deposited into the Debtor's operating account and would be retained by the Debtor until further court order. The sum is a relatively small amount with regards to the overall numbers in the case and the Debtor's administrative expenses must be paid out of some source, as the Debtor does not have any operating income at this time, this is the sole source available for administrative expenses. As such, Debtor respectfully requests that $60,000, 5% of the sales price for the Subject Property, be set aside as a carve out for administrative expenses of the Debtor's estate.

6. The Purchase and Sale Agreement indicates that a real estate agent was and is employed by the buyers. As per the terms of the Purchase and Sale Agreement, the real estate agent representing the James Group will be compensated by a separate agreement and the $1,200,000 purchase price does not include any real estate agent fees. The only amounts paid from the purchase price will be, as indicated in the Agreement, half of the closing costs, the Debtor's pro rated portion of any unpaid property taxes on the Subject Property, the transfer taxes and, if the court allows it, the 5% carve out requested for administrative expenses. The remaining proceeds will be distributed to the First Trust Deed holders on a pro rata basis based on the percentage of ownership of the First Trust Deed. As such, the actual amount of the claim, as yet to be determined, does not need to be set in stone for the purposes of this motion..

///

---

[2] Any cash collateral is inherently property of the estate and is no different from any other type of overencumbered collateral. (11 U.S.C. § 541.)

MOTION OF DEBTOR-IN-POSSESSION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS, FOR LEAVE TO WITHHOLD AN ADMINISTRATIVE CARVE OUT OF 5%, ETC.

The Debtor therefore respectfully requests that the sale of the Subject Property be approved, that any escrow fees and costs payable by the Debtor in an amount to be determined in the actual closing statement be paid from the proceeds of the sale. Debtor requests that an administrative carve out of $60,000, 5% of the sales proceeds, be retained by the Debtor in its operating account pending further order of this Court. Finally, Debtor requests that payments be made to the First Trust Deed holders in pro rate payments from the net proceeds of the sale.

This motion is based upon the notice of motion, the motion, the declaration of Jonathan Shiff filed concurrently herewith, the exhibits to said declaration and such other testimony, oral or documentation to be provided at the time of any hearing hereon.

Dated: May 14, 2010

/S/ Gustavo E. Bravo
Gustavo E. Bravo, Esq.
SMAHA LAW GROUP, APC
*Attorney for Debtor,*
SARGENT RANCH, LLC

W:\Sargent Ranch\Motion.Sale.Solar\101.Motion.Sale.wpd