JOHN J. IMMORDINO (State Bar No. 93874)
SUSANNAH M. DUDLEY (State Bar No. 182939)
KELLY A. SZE (State Bar No. 242645)
**WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Telephone:(213) 443-5100
Facsimile: (213) 443-5101
Attorneys for ARCH INSURANCE COMPANY

```
                                    ┌──────────────────────────────┐
                                    │  ✓ FILED                      │
                                    │  ___ ENTERED                  │
                                    │  ___ LODGED                   │
                                    │  ___ RECEIVED                 │
                                    │                               │
                                    │      OCT - 4 2010             │
                                    │                               │
                                    │  CLERK, U.S. BANKRUPTCY COURT │
                                    │  SOUTHERN DISTRICT OF CALIFORNIA │
                                    │  BY  HS            DEPUTY     │
                                    └──────────────────────────────┘
```

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No.: 08-13249-LA7 |
| | (Previous Chapter 11) |
| BARRATT AMERICAN, INC., | |
| | NOTICE OF ASSIGNMENT OF WHILLOCK CONTRACTING, INC.'S CLAIM OF LIEN TO ARCH INSURANCE COMPANY |
| Debtor. | |
| | ***Assigned to the Honorable Louise DeCarl Adler*** |

**PLEASE TAKE NOTICE** that WHILLOCK CONTRACTING, INC. ("Whillock"), has assigned all of its rights, title, and interest in and to its Mechanic's Lien, recorded with the San Diego County Recorder's Office, on October 18, 2007, as instrument 2007-066961, against the real property more commonly known as City Square in Escondido, California, APN 233-051-02; 233-051-03; 233-122-01; 233-122-02; 233-122-03; 233-122-04; 233-122-05; and 233-122-06 to ARCH INSURANCE COMPANY ("Arch").

///

///

///

1

NOTICE OF ASSIGNMENT OF WHILLOCK CONTRACTING, INC.'S CLAIM OF LIEN TO ARCH INSURANCE CO.

969777.2

13249not 2    50/48

1    On March 6, 2009, Whillock filed a Proof of Claim in the above-captioned

2    matter, identified on the court docket as Claim No. 87, in the sum of $264,485.51.

3    Whillock's Proof of Claim is attached hereto as Exhibit "1" and incorporated

4    herein by this reference as though fully set forth in full.  Attached hereto as Exhibit

5    "2" and incorporated herein by this reference as though fully set forth in full is

6    evidence of Whillock's assignment of claim to Arch.

7

8    DATED:  September 29, 2010                WILSON, ELSER, MOSKOWITZ,
                                                                   EDELMAN & DICKER LLP
9

10

11                                                                By
                                                                   JOHN L. IMMORDINO
12                                                                SUSANNAH M. DUDLEY
                                                                   KELLY A. SZE
13                                                                Attorneys for ARCH
14                                                                INSURANCE COMPANY

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF ASSIGNMENT OF WHILLOCK CONTRACTING, INC.'S CLAIM OF LIEN TO ARCH INSURANCE CO.

969727.2

Exhibit 1

Case 08-13249-LA7    Claim 87-1    Filed 03/06/09    Desc Main Document    Pg. 1 of 10

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT | Southern District of California | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor:<br>Barratt American, Inc. | Case Number:<br>08-13249-LA11 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

**FILED KB**

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Whillock Contracting, Inc.

CLERK
U.S. BANKRUPTCY CT.
SO. DIST. OF CALIF.

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
The Law Firm of Thomas M. Finrow; 9131 Fletcher Parkway, Suite 125
La Mesa, CA 91942

Court Claim Number:_____
*(If known)*

Filed on:_____

Telephone number:
(619) 469-4181

Name and address where payment should be sent (if different from above):
Same as above

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Telephone number:

☐ Check this box if you are the debtor or trustee in this case.

| 1. Amount of Claim as of Date Case Filed:    $                264,485.51 | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

Specify the priority of the claim.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.    See attachment "A"

2. **Basis for Claim:**  Services Performed, Foreclosure Action
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:  1037

   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☑ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe:

Value of Property:$ 10,000,000.00  Annual Interest Rate 10%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $  264,485.51    Basis for perfection: Mechanic's Lien Foreclosure
                                                  Action, plus interest
Amount of Secured Claim: $  264,485.51    Amount Unsecured: $    0.00

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

Summary of claim attached as Attachment "B"

If the documents are not available, please explain:

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date:<br>03/09/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Thomas M. Finrow, Attorney for Creditor Whillock Contracting, Inc., address and telephone same as above | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

ATTACHMENT "A"

INTEREST CALCULATION

Original Contract Plus Approved Change Orders:  $702,742.00
Less Payments:  $470,067.26

Principal Amount Due:  $232,674.74, due on October 24, 2007

Interest on principal amount due at 10% per annum = $23,267.47/year, $63.75/day

October 24, 2007 to March 6, 2009 = 499 days x $63.75/day = $31,811.25 interest

Total Claim = $264,485.51 ($232,674.26 principal + $31,811.25 interest as of March 6,
2009)

ATTACHMENT "B"

Summary of Whillock Contracting, Inc.'s Claim

Original Contract Amount: $497,352.00
Change Order 901:          $   7,028.00
Change Order 902:          $  14,888.33
Change Order 903:          $   2,815.00
Change Order 904           $  10,638.36
Change Order 905           $  89,699.97
Change Order 906           $  25,438.47
Change Order 907           $  54,881.06
TOTAL:                     $702,742.04

 Less Payments:  $470,067.26

Principal Amount Due:  $232,674.74, due on October 24, 2007

Interest on principal amount due at 10% per annum = $23,267.47/year, $63.75/day

October 24, 2007 to March 6, 2009 = 499 days x $63.75/day = $31,811.25 interest

Total Claim = $264,485.51 ($232,674.26 principal + $31,811.25 interest as of March 6, 2009)

FILED

07 NOV 30 PM 3: 40

(21)
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY. CA

1 | Thomas M. Finrow, Esq. (98976)
Christina M. Finrow, Esq. (246721)
2 | THE LAW FIRM OF THOMAS M. FINROW
9131 Fletcher Parkway, Suite 125
3 | La Mesa, CA 91942
TEL: (619) 469-4181
4 | FAX: (619) 469-8733

5 | Attorneys for Plaintiff Whillock Contracting, Inc.

6

7

8 |                SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9 |                COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION

10 | WHILLOCK CONTRACTING,.INC., a            ) Case No. 37-2007-00080045-CU-BC-NC
    California corporation,                  )
11 |                                          ) PLAINTIFF WHILLOCK
              Plaintiff,                      ) CONTRACTING, INC.'S
12 |                                          ) COMPLAINT FOR:
              v.                              )
13 |                                          ) 1. Breach of Contract;
    BARRATT AMERICAN, INC. a                 ) 2. Common Counts-Work Performed;
14 | California corporation; and DOES 1      ) 3. Account Stated; and
    through 20, inclusive,                   ) 4. Foreclosure of Mechanics' Lien
15 |                                          )
              Defendants.                     )
16 | _____)

17 |        Plaintiff WHILLOCK CONTRACTING, INC. alleges as follows:

18 |                          **GENERAL ALLEGATIONS**

19 |        1. Plaintiff, WHILLOCK CONTRACTING, INC. (hereinafter referred to as

20 | "WHILLOCK CONTRACTING") is and was at all times herein mentioned, a corporation

21 | organized and existing under the laws of the State of California and is, and was, a duly

22 | licenced contractor in the State of California, License No. 572217, maintaining its principal place

23 | of business in the City of El Cajon, County of San Diego, California.

24 |        2. Plaintiff is informed and believes and thereon alleges that at all times mentioned

25 | herein Defendant BARRATT AMERICAN, INC. (hereinafter referred to as "BARRATT") is

26 | a California corporation maintaining its principal place of business in the Carlsbad, County of

27 | San Diego, State of California.

28 |        3. Plaintiff is informed and believes and thereon alleges that during all times

COMPLAINT OF PLAINTIFF WHILLOCK CONTRACTING, INC.

1    mentioned herein Defendant BARRETT owned separately or collectively all of that certain real

2    property, commonly referred to as City Square, located in the City of Escondido, County of

3    San Diego, and described as follows: City Square, Escondido APN #233-051-02, 233-051-03,

4    233-122-01, 233-122-02, 233-122-03, 233-122-04, 233-122-05 & 233-122-06 (hereinafter

5    referred to as the "PREMISES").

6        4. Plaintiff WHILLOCK CONTRACTING is ignorant of the true names or capacities

7    of Defendants sued herein as DOES 1 through 20, inclusive, and therefor sues said Defendant

8    by such fictitious names. Plaintiff WHILLOCK CONTRACTING will amend this complaint

9    to allege the true names or capacities when ascertained. Plaintiff WHILLOCK

10    CONTRACTING is informed and believes and thereon alleges that each such fictitiously

11    named Defendant was responsible in some manner for the occurrences herein alleged, and that

12    Plaintiff's injury as herein alleged was proximately caused by such Defendant's act.

13        5. Plaintiff WHILLOCK CONTRACTING is informed and believes, and based

14    thereon alleges, that at all times herein mentioned, Defendants, and each of them, were the

15    agents, servants, employees, joint venturers, partners, and/or subsidiaries of the remaining

16    Defendant BARRETT, and as such, were acting within the course and scope and authority of

17    such agency, employment, joint venture, and/or partnership and with the permission, consent,

18    authorization and/or ratification of the remaining Defendant BARRETT.

19        6. Venue is proper in this court because the property that is the subject of this action is

20    located within the jurisdiction of this court and because the Defendant's primary place of

21    business is located within the jurisdiction of this court.

22    <u>FIRST CAUSE OF ACTION</u>

23    (Breach of Contract)

24    (Against Defendant BARRATT and DOES 1 through 20, Inclusive)

25        7. Plaintiff repleads, realleges, refers to and incorporates by reference paragraphs 1

26    through 6, inclusive, of this complaint.

27        8. On or about September 24, 2006, Defendant BARRATT, as owner of the

28    PREMISES; executed and entered into a written contract with Plaintiff WHILLOCK

1  CONTRACTING in the amount of Four Hundred Ninety-Seven Thousand, Three Hundred
2  Fifty-Two Dollars ($497,352.00) whereby WHILLOCK CONTRACTING was to furnish
3  certain grading, demolition, asbestos and lead abatement, site improvement and other services
4  to the PREMISES. A copy of said contract is attached hereto as Exhibit "A" and made a part
5  hereof. This contract amount was thereafter increased to $702,742.00. A copy of the change
6  order evidencing said increase is attached hereto as Exhibit "B" and made a part hereof.

7      9. Plaintiff completed its performance pursuant to the terms of the parties' agreement,
8  by furnishing all requested services, labor, materials and equipment called for by said contract,
9  and other like labor , materials and equipment including extras and change orders thereto, or
10  such performance has been excused by Defendant. Plaintiff performed all conditions,
11  covenants and promises under the contract, or such conditions, covenants and promises were
12  excused by Defendant, and did so in a timely manner.

13      10. The total value of the services, labor, materials and equipment provided by
14  Plaintiff pursuant to said contract, including extras and change orders thereto, is $702,742.00.
15  Of that sum, $470,067.26 has been paid, and there is now due and owing to Plaintiff
16  WHILLOCK CONTRACTING the sum of $232,674.74.

17      11. Plaintiff has demanded that Defendant pay the amount still owed, to wit,
18  $232,674.74. However, Defendant has failed and refused and continues to fail and refuse to
19  pay the sum due.

20      12. Defendant BARRATT has breached the contract by refusing to pay the amount
21  due under the terms of the agreement and extras and change orders thereto. There is presently
22  $232,674.74 due, owing and unpaid, plus interest thereon at the legal rate from a date
23  according to proof to the present date. Plaintiff is entitled to its attorneys' fees or portions
24  thereof upon being the prevailing party under the terms of the contract and/or California
25  statutes.

26  **SECOND CAUSE OF ACTION**
27  (Common Count-Work Performed)
28  (Against Defendant BARRATT and DOES 1 through 20, Inclusive)

13.  Plaintiff repleads, realleges, refers to and incorporates herein by reference Paragraphs 1 through 12, inclusive, of this complaint.

14.  Throughout the duration of the contract, Plaintiff furnished services, labor and materials at the special instance and request of defendant BARRATT having a reasonable value of $702,742.00, of which Defendant has failed and refused and continues to fail and refuse to pay the balance due of $232,674.74.  There is now due and owing from Defendant BARRATT to Plaintiff WHILLOCK CONTRACTING the sum of $232,674.74, together with interest thereon at the legal rate from the date due as proved at trial.

### THIRD CAUSE OF ACTION

(Common Count-Account Stated)

(Against Defendant BARRATT and DOES 1 through 20, Inclusive)

15.  Plaintiff repleads, realleges, refers to and incorporates herein by reference Paragraphs 1 through 13, inclusive, of this complaint.

16.  Within two years preceding the commencement of this action, an account was stated by and between Plaintiff WHILLOCK CONTRACTING and Defendant BARRATT and/or DOES 1 through 20, inclusive, wherein it was ascertained and agreed that Defendant BARRATT and/or DOES 1 through 20, inclusive, owed the sum of $232,674.74 to Plaintiff, together with interest thereon at the legal rate from the date due as proved at trial.

17.  The debt sued upon herein was incurred on or after January 1, 1987, and is subject to the provisions of California Civil Code Section 1717.5 and thus Plaintiff is entitled to be awarded attorneys' fees pursuant to said section.

### FOURTH CAUSE OF ACTION

(Foreclosure of Mechanic's Lien)

(Against Defendant BARRATT)

18.  Plaintiff repleads, realleges, refers to and incorporates herein by reference Paragraphs 1 through 11, inclusive, of this complaint.

19.  The whole of the PREMISES on which the work of improvement is situated is required for the convenient use and occupation of the work of improvement.

20. On or about October 18, 2007, Plaintiff duly recorded as document number 2007-0669612, in the official records of the County of San Diego, California, its verified claim of lien in the amount of Two Hundred Thirty-Two Thousand Six Hundred Seventy-Four Dollars and Seventy-Four Cents ($232,674.74) for the cost and/or value of the services, labor, materials and equipment it bestowed and/or incurred in performing the grading, demolition, asbestos and lead abatement services to and on the PREMISES. A true and correct copy of the mechanic's lien filed by Plaintiff is a matter of public record and is attached hereto as Exhibit "C" and incorporated herein by reference.

21. Plaintiff is informed and believes that its lien was filed timely and ninety (90) days had not elapsed or expired from the date of the filing of the lien to the date this suit was filed. The lien recorded, as referenced above, includes the amount due for all labor, services, material and equipment furnished by Plaintiff to the PREMISES, and after deducting all payments since the lien was duly filed, the balance due to Plaintiff is the sum of $232,674.74, plus interest, costs incurred for filing said lien, and costs of suit.

22. Defendant BARRATT and DOES 1 through 20, inclusive, have or claim to have some estate, lien, right, title or interest in the PREMISES, but which claims are subject and subordinate to the claim of lien of Plaintiff WHILLOCK CONTRACTING.

## PRAYER

WHEREFORE, PLAINTIFF prays for judgement as follows:

### ON THE FIRST, SECOND AND THIRD CAUSES OF ACTION

(Against Defendant BARRATT and DOES 1 through 20, Inclusive)

1. For the sum of $232,674.74 principal, together with interest at the legal rate as determined by the Court from the due date, to date of entry of judgment or payment thereof;

2. For reasonable attorneys' fees and costs of suit pursuant to the contract, Civil Code Section 1717.5 and/or other California statutes;

3. For other and further relief as the Court may deem proper.

### ON THE FOURTH CAUSE OF ACTION

(Against Defendant BARRATT)

1    4. Adjudging that the rights, claims, ownership, liens, titles and demands of Defendant

2  BARRATT in the above described real property are subsequent to and subject to the lien of

3  Plaintiff;

4    5. Adjudging that the mechanic's lien in the amount stated above be foreclosed, and

5  that the usual judgment be made for the sale of the property according to law by a

6  commissioner to be appointed by the Court; that the proceeds of the sale be applied in payment

7  of the amounts including interest at the legal rate from the date due as determined by the Court

8  to date of entry of judgment due to Plaintiff; that Defendant and all persons claiming under it,

9  subsequent to the mechanic's lien of the Plaintiff, whether as lien claimants, judgment

10  creditors, purchasers, encumbrances, or otherwise, be barred and foreclosed from all rights,

11  claims, interests, or equity of redemption in the property and every part of the property when

12  time for redemption has passed;

13    6. Adjudging that if there is a deficiency of the proceeds to satisfy the amounts due to

14  Plaintiff, judgment for the deficiency be entered against Defendant following proceedings

15  prescribed by law;

16    7. Permitting Plaintiff to become a purchaser at the foreclosure sale;

17    8. For costs of suit incurred herein including all attorneys' fees;

18    9. For such other and further relief as the Court may deem proper.

19  Dated:  11-29-07

20                                              Thomas M. Finrow, Esq.
21                                              Attorney for Plaintiff

22

23

24

25

26

27

28

---

Exhibit "A"

RECEIVED
SEP 1 0 2006
RECEIVED

PLEASE RETAIN
FOR YOUR RECORDS

**BARRATT** AMERICAN

## Contractor Agreement

| Attention: Contract Administrator<br>Alecsandra Hazelwood | Fax No.: (760) 929 8231<br>Contract No.: 715170 |
|---|---|
| Contractor: Whillock Contracting, Inc.<br>Contractor  346 Front Street<br>Address:    El Cajon, CA  92020 | Owner:    Barratt American Incorporated<br>Owner:    5963 La Place Court, Ste. 207<br>Address:  Carlsbad, CA  92008<br>Phone:    760 431 0800 |
| Project: City Square | |

This contract agreement is made at Carlsbad, California, this 3rd day of August, 2006, by and between Barratt American Incorporated, a Delaware corporation ("Owner") and Whillock Contracting, a Corporation ("Contractor").

### Article 1:  Contract Price:

The Owner agrees to pay Contractor for the performance of the Work, as specified in the pay schedule (Exhibit "B"), in the total fixed amount of $497,352.00 ("Contract Sum") which shall be firm and binding on Contractor for the Work and not conditioned upon any matters including without limitation, any labor increase or material escalation costs which might occur during the course of construction.

### Article 2:  Definitions

As used herein, the following terms shall have the meaning indicated.

"Agreement", or "Contract" or "Contractor Agreement" means this Contractor Agreement and any amendments or modifications hereto, including its Exhibits, and incorporates by this reference, all written provisions contained in the Contractor Agreement, regardless of position, the Plans and Specifications, all Legal Requirements, and/or all general, supplementary and other conditions specified herein as being applicable to the Project.

"Architect" means KTGY Architects such other architect as may be selected by Owner to design the Project.

"Commencement Date" means, with respect to each Phase, the date set forth in the Project Construction Schedule for the Commencement of Work for such Phase.

"Commencement of Work" means, as to any portion of the Work being performed by Contractor, the commencement of physical work at the site to the improvements situated thereon.

"Completion Date" means, with respect to each Phase, the date set forth in the Project Construction Schedule for completion of the Work for such Phase.

"Contract Sum" refers to the Contract Sum specified in Article 1 above.

"Contractor's Fee" means ___N/A___ percent ( N/A %).

"Cost of the Work" has the meaning set forth on Exhibit "B".

"Demolition Phase Contract Sum" means $___N/A___ .

"Design Build Work" means design components of the Work that are designated as Contractor's responsibility in an exhibit to a Change Order.

"Engineers" means engineers designing portions of the Work

"Interest" shall mean the highest rate of interest then allowed by California law, under the circumstances.

"Legal Requirements" means all applicable federal, state and local laws, codes, ordinances, rules, regulations and orders bearing on the performance of the Work, as well as applicable regulations of any other body with jurisdiction over the Project applicable to the Project or the Work.

"Lender" shall mean any construction, interim or permanent lender of Owner for the project. The initial Lender will be Bank of America, whose address for notice purposes is 5 Park Plaza, Ste 500, Irvine, CA  92614-8525 attn: Phyllis Sakamoto.

"Modification" means all written modifications, alterations, or deviations in the Work or any additional Work not shown in this Agreement.

"Owner's Authorized Representative" refers to Walter Fritz (or, if he is unavailable, Larry Clement), or such other person designated in writing by Owner from time to time, who is authorized to grant approvals, allowances and authorizations on behalf of Owner.

"Document List" means the Document List described on Exhibit "A-1", including any bulletins and addenda thereto.

_Contractor's Initials_          Page 1 of 61          _Owner's Initials_

"Project" refers to construction of a _4_ -story residential project consisting of approximately _102_ condominium Units and _(see Sheet A.01 for square footage per unit and buildings)_ square feet of Type V Fire Resistive above grade construction over _0_ levels of underground parking consisting of more or less _(see Sheet A.01 for square footage per unit and buildings)_ square feet of Type I construction ("Project") to be constructed on a 3.65 acre site located at Lots 3 –14 inclusive in Block 87 and 9-14 inclusive of Block 94, Escondido, California ("Site"). The Project is depicted on the Project Site Plan (as defined below) and generally described in the Plans and Specifications.

"Project Construction Schedule" refers to the project schedule attached hereto as Exhibit "C".

"Project Manager" refers to Contractor's project manager designated under Section 4.10.

"Project Site Plan" means the site plan of the Project attached hereto as Exhibit "J".

"Project Team" means the positions and durations described in Exhibit "H"

"Reports" means the reports and other documents listed on Exhibit "A-1" attached hereto and incorporated herein, all of which have been delivered to Contractor.

"Right to Repair Act" means California Civil Code Sections 895 through 945.5, as the same may be amended from time to time.

"Schedule of Values" refers to the Schedule of Values attached hereto as Exhibit "B–4" and incorporated herein.

"Site" refers to the real property located on "Lots 3 – 14 inclusive in Block 87 and Lots 9-14 inclusive of Block 94" in the City of Escondido, County of San Diego, State of California, as more particularly described on Exhibit "J" attached hereto.

"Subcontractor" shall mean a subcontractor of any tier or materialmen.

"Substantial Completion" means the date certified by the Architect and approved by Owner when (i) construction of the Work is sufficiently complete in accordance with the Contract (except for minor details of construction, landscaping, decoration, or installation of the type normally found on a punchlist and that do not materially affect the use, operation, marketing or sale of the Project) and that all utilities, operational systems and equipment are fully operational, so that Owner and/or purchasers of the Units within the Project can beneficially occupy and use the Project for its intended purpose, (ii) Owner has determined (with Contractor's written assurance) that all punchlist work can be completed within thirty (30) days, (iii) all required governmental inspections applicable to the Work have been completed and all final approvals required for beneficial occupancy of the Project have been obtained from all public and quasi-public authorities with jurisdiction over the Project, including issuance of a permanent certificate of occupancy for all Units and other portions of the Project, and (iv) all other conditions precedent to Substantial Completion as set forth in the Contract have been satisfied. In general, the only remaining Work would be minor in nature so that Owner could occupy the Work, the Units within the Project can be accepted as final by Owner within thirty (30) days following the date of Substantial Completion, and the completion of the remaining Work by Contractor will not materially interfere with or hamper Owner's or any purchaser's use of the Units within the Project.

"Unit" shall mean a completed residential condominium within the Project as shown on the condominium plan for the Project.

"Work" shall refer to the Work to be completed by Contractor as described in Article 3 of this Contract, or as the context requires, to portions of the Work being performed or completed by Contractor.

Article 3:  Scope of Work

3.01          General Scope

Contractor agrees to furnish all labor, supervision, services, materials, supplies, fixtures, tools and equipment necessary to fully complete the Project ("Work") in accordance with the Plans and Specifications. The scope of Work includes, but is not limited to, those tasks set out in Section 3.03 and Exhibit "D" and Exhibit "D-1". The Work is to be performed and materials are to be furnished by Contractor, as specified in Article 6 hereof.

Owner may direct Contractor to perform the Work in up to 5 phases (phases). The first phase will consist of the demolition and removal of the existing improvements located on the Site, including the removal, transportation and disposal of any asbestos-containing materials, any lead-containing materials and any other hazardous materials that may be present in accordance with all Legal Requirements ("Demolition Phase"). The second phase will consist of construction of the Project in accordance with Contract ("Construction Phase"). Owner may elect at any time prior to the commencement of the Construction Phase to terminate this Contract, in which case Contractor will be compensated for the Work performed during the Demolition Phase through the date of such termination based on a percentage of the Demolition Phase Contract Sum equal to the percentage of Demolition Phase Work completed as of the date of such termination. The Construction Phase will not commence unless and until Owner gives Contractor a written notice to proceed with the Construction Phase. See Exhibit "J" for phase details.

~~As part of the Work, Contractor will construct a complete residential Unit within the Project as soon as possible, and prior to completion of the other Units, to demonstrate coordination, quality and the proper completion of fit and finishes as a benchmark to be used by Contractor and its subcontractors for all subsequent Units.~~

~~Contractor will complete the Units in the order directed by Owner. Contractor will not be entitled to any adjustment to the Contract Sum or any extension of the Project Construction Schedule if Owner directs Contractor to complete any Units out of sequence.~~

_Contractor's Initials_                          Page 2 of 61                          _Owner's Initials_

3.02    Governing Terms

The Plans and Specifications are intended to supplement each other, so that any Work shown in either and not mentioned in the other is to be executed the same as if it were mentioned and set forth in both. Any item of Work mentioned in one portion of the Contract, but not shown on or mentioned in all portions of the Contract, shall be provided by Contractor, without extra charge, as if shown in all portions of the Contract. If there is any inconsistency between the Plans and the Specifications, the Specifications shall govern. If there is any inconsistency between the Plans and/or Specifications on the one hand and this Contractor Agreement, including the Exhibits and any other documents incorporated herein by reference, and the Plans and/or Specifications on the one hand and the Legal Requirements, then the Legal Requirements shall govern. The drawings shall be accurately followed according to figured dimensions; scaled dimensions are not to be used for construction. Within the Contract: (i) dimensions shall always be figured rather than determined by scale or rule; (ii) full size or large scale details or drawings shall govern small scale details or drawings; (iii) written information shall govern in preference to drawings; in which event the Legal Requirements shall apply; and (iv) where conflicts occur between any of the Contract Documents, the more stringent or higher requirements shall govern. If a dimension is lacking, Contractor shall request clarification from the Architect and Owner before proceeding. No Work shall be performed without actual dimensions, and Contractor shall not rely upon any total dimension that is an accumulation of a string of dimensions without first verifying that the sum is a total correct dimension. No subcontract shall alter the intent of the Contract and where conflicts occur between the subcontracts and the Contract, the Contract shall govern. In the case of an inconsistency between drawings and specifications or within either document that is not clarified by addendum, the more stringent, better quality or greater quantity of work shall be provided in accordance with the Owner's direction. Contractor acknowledges that Plans and Specifications may periodically be updated during the construction process and Contractor is responsible for checking with Owner regularly to confirm that Contractor is using the current Plans and Specifications. The scope of Work may not necessarily be limited to one portion of the Plans and Specifications and Contractor is charged with the responsibility for adhering to all relevant Plans and Specifications to complete this Contract.

In general, drawings compliment specifications as to the scope, quality and workmanship of the Work. Anything mentioned in the specifications and not shown on the drawings, or shown in the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned or both. In case of a conflict or discrepancy on the drawings or specifications, the matter may, at Owner's election, be promptly submitted to the Architect for resolution. Any inconsistency or question of intent in any of the Plans and Specifications prepared by the Architect that cannot be resolved with reference to this Article shall be referred to Owner for interpretation before proceeding.

Whenever a provision of the Specifications conflicts with agreements or regulations in force among members of trade associations, unions, or councils signatory to the Contractor or any of its subcontractors with respect to their scope of work, which regulate or distinguish the portions of the Work which shall or shall not be performed by a particular trade, Contractor shall make necessary arrangements to reconcile such conflict without delay, damage, cost to Owner, or recourse to the Architect or Owner.

Contractor will assist Owner and its consultants in field checking during any observation or inspection period. When layouts of the building and the Work are to be made, Contractor shall notify the Architect and Owner in sufficient time so that such persons may be present.

Wherever typical parts or sections of the Work are completely detailed on the drawings and other parts or sections which are essentially of the same construction are shown in outline only, the complete details shall apply to the Work which is shown in outline. Drawings and diagrams for mechanical and electrical Work shall be followed only for Work for which they were specifically prepared and shall be considered as diagrammatic only, not to be used for any structural guidance or architectural layout.

For the duration of the Project, the Contractor shall maintain and update monthly, with completed to date "As Built" notations, a designated set of drawings which shall be available at the Project Site for the Owner's and the Architect's inspection at any time. These documents shall be known as the "As Built Drawings". The information given therein shall include, but not be limited to: (i) the actual location of the underground utilities and appurtenances as referenced to permanent surface improvements; (ii) the location of internal utilities and appurtenances concealed in building structures; and (iii) significant changes during the construction process and significant detail not shown in the original Contract. The As Built Drawings are to be kept accurately. No Work shall be permanently concealed until the required information has been recorded.

Contractor is responsible for the intermeshing of the various portions of the Work so that no portion shall be left in an unfinished, incomplete or unintegrated condition. Contractor shall, within five (5) days after the Commencement of Work, schedule a meeting with all Subcontractors and cause to be studied and prepared an overlay of all of the Work to determine if different trades may have conflicting areas of Work. Contractor shall immediately report all conflicts to the Architect and Owner for resolution. Contractor has fully reviewed the Contract Documents and has determined and agrees that the Work is constructible. Contractor will coordinate its Work with other contractors that Owner may engage in order to comply with the Project Construction Schedule.

The organization of the Specifications in divisions, sections, articles and the like, and the arrangement of Drawings shall not control Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade, nor shall such separation relieve Contractor from the responsibility for the Work and for the satisfactory completion of the entire Work regardless of the trade divisions. Contractor's instructions to bidders and subcontracts must clearly delineate the scope of the Work to be completed by the Subcontractor. The Specifications are not intended to mention every item of Work even if the Specifications are of such nature that they could have been shown thereon.

3.03    Contractor warrants and represents to Owner it is an experienced and knowledgeable contractor with substantial expertise in constructing quality projects similar to the Project. Contractor further represents that it has had ample opportunity to review the Plans and Specifications prior to the execution of this Contract and will have the opportunity to review the additional contract documents when they are prepared for the express purpose of formulating all questions necessary to prepare itself for performing the Work, including without limitation, the general and local conditions bearing on: (1) accessibility to the Site for vehicles, equipment, storage, and workmen and availability of parking for automobiles, trucks and motorized construction equipment; (2) character, quality, and quantity of surface and subsurface conditions to be encountered; (3) types and kinds of equipment and

Contractor's Initials                                        Page 3 of 61                                        Owner's Initials

facilities required to perform the Work under the Contract; (4) local, state and federal ordinances and regulations relating to the Contractor and Work; (5) variances at the Site from the Contract Documents and (6) traffic control and street closure procedures and requirements of the City of Escondido. Contractor represents that after due review and investigation that all results of said investigation will be included in the Contract Sum and the other provisions of this Contract and no additional charge will be made therefore. By submitting its Contract Sum, Contractor represents that it has determined and verified the materials, field measurements and field construction criteria required by and set forth in the Contract and has checked and coordinated the information set forth in the Contract with the scope of Work set forth in this Contract. Contractor acknowledges that the Contract does not provide all details of construction, but Contractor has warranted and represented that it has the knowledge and expertise to implement the Contract so as to complete the Work for the use for which it is intended and in accordance with the requirements of this Contract and the spirit and intent of the Contract. Owner has relied on such representation and warranty in its decision to select Contractor to perform the Work.

3.04        Contractor further warrants and represents to Owner that (i) Contractor is fully familiar with, and the Contract Sum includes the entire cost of the Work associated with, all of the terms, conditions (including, without limitation, ingress and egress, traffic flow patterns, and hours of Work) and obligations of the Contract or arising under Legal Requirements, the location and condition of the Site, and the conditions under which the Work is to be performed, including all surface conditions and characteristics and all typical subsurface conditions and characteristics that prevail or that can be reasonably expected in the location of the Project, as well as all subsurface conditions and characteristics indicated in any soils reports provided by Owner to Contractor; (ii) Contractor enters into this Contract based upon its investigation of all of such matters; and (iii) Contractor is in no way relying upon any opinions, statements, warranties or representations of Owner. Contractor acknowledges that it is Contractor's responsibility and Contractor is required, prior to entering into this Contract, to investigate and familiarize itself with all conditions affecting the performance of its obligations under the Contract, including, without limitation: all Legal Requirements and local practices applicable to its Work under this Contract; the availability and adequacy of personnel, workmen, material, supplies, equipment, power, utilities, fuel, etc. and, with respect to each of the foregoing, the cost and suitability thereof; the prevailing wage scales, benefits and working conditions; craft jurisdictions; craft area practices; existing labor agreements; the character and content of all other contracts related to the Project, including such separate prime contracts as may have been awarded by Owner; all options, Site conditions, characteristics, considerations and restrictions, lease agreements, royalties, underground conditions and characteristics, prevailing weather and climatological conditions and history; and any other factor or factors which may affect Contractor's obligations under the Contract, including, without limitation, the Work; and Contractor hereby warrants and represents to Owner that it has examined the Site, investigated all such matters, fully satisfied itself as to the nature of such conditions and characteristics and will include the effect of all such conditions and characteristics. Contractor further agrees that Contractor shall not be entitled to any additional payment or additional time or any claim whatsoever resulting from Contractor's failure to investigate and fully satisfy itself as to the conditions under which this Contract is to be performed, including any claim resulting from any misunderstanding or miscalculation on the part of Contractor with respect thereto.

3.05        Exhibits

The Contract incorporates by reference the following Exhibits:

Exhibit A: Schedule Of Plans and Specifications

        Listed on the Exhibit "A-1" is a document list of the plan sheets, specifications, bulletins, amendments, special provisions and other requirements.

Exhibit B: Pay Schedules

Exhibit C: Project Construction Schedule

Contractor agrees to complete specific phases of the Work on the dates given in the Project "Construction Schedule" shown on Exhibit "C". If the completion of the Work is delayed by any cause which is (a) beyond Contractor's control (b) not reasonably foreseeable or anticipatable, (c) not due to any fault of Contractor or its Subcontractors, agents or any person for whom Contractor is responsible, and (d) caused by (i) damage or delay at the Project Site which arises by fire, storm, lightning, flood, earthquake, tidal wave, surface or subsurface water, mob violence, vandalism, or other causality or (ii) the failure of any governmental entity with jurisdiction to issue permits, approvals or licenses necessary for the prosecution of the Work within a normal period of time without the fault of Contractor, then the time of completion will be extended for a period equivalent to the time lost by reason of any or all such causes; provided that as a precondition to any such extension, Contractor shall have delivered a written claim for such an extension within seventy-two (72) hours after the occurrence of such cause, specifying the nature of the occurrence and describing possible alternatives for making up the time, and the costs and other pertinent factors attributable to each alternative. Failure to timely deliver such written claim to Owner will constitute Contractor's waiver of any claim to an extension. In addition, no extension of the Project Construction Schedule will be allowed unless agreed to by Owner in a written Modification. However, to the fullest extent permitted by law, Owner and its agents and employees shall not be held responsible for any losses or damages sustained by Contractor through delays caused by Owner, or its agents and employees, or any other contractor or subcontractor, or by casualty, abnormal weather conditions, or any other cause, and Contractor agrees not to make, and hereby waives, any claim for damages for delays, and agrees that the sole right and remedy therefore shall be an extension of time. Except as expressly provided herein, Contractor shall not be entitled to any extensions of time for performance of the Work.

Exhibit D: Scope of Work

        Listed on Exhibit "D-1" is a schedule which includes, without limitation, specific tasks that Contractor is required to perform under this Agreement.

Exhibit E: OCIP Addendum – complete policy available upon request.

Exhibit F: Operational Guides

_____ Contractor's Initials                Page 4 of 61                _____ Owner's Initials

Exhibit "F" is the Construction and Customer Service Operational Guidelines

Exhibit G: Subcontractor Safety Plans and Material Safety Data Sheet Reports (if applicable)

Exhibit "G" Subcontractor Safety Plan and MSDS report information is to be supplied by Contractor at time contract is signed.

Exhibit H: Hourly Rate – Not Used  (as negotiated and provided at time of Contract with Barratt American, Inc. – if applicable)

That Contractor must fulfill in compliance with this Agreement

Exhibit I: ADR Addendum.

Article 4: Conditions

4.01        Cleanup

Contractor shall at all times keep the Work and the Site free from accumulation of waste materials or rubbish caused by its operations. Upon completion of the Work, all excess material, debris, tools, machinery, and equipment shall be removed from the Site by Contractor and all trash shall be stacked as directed by Owner.  If Contractor fails to clean up, Owner shall have the option of doing so and of removing said items at Contractor's own risk and expense.

4.02        Verifying Facility Locations

The location of facilities shown on the Plans and Specifications is for bidding purposes only.  The final location shall be directed by Owner.  Contractor shall verify facility locations with Owner prior to beginning Work.  If Contractor proceeds with Work without proper coordination with Owner, then Contractor is responsible for any and all costs required to relocate facilities to proper locations. Contractor shall call underground alert prior to any excavation.

4.03        Notifying Owner

It is the responsibility of Contractor to examine thoroughly the existing conditions prior to starting any Work.  If any condition is discovered which is deficient of unacceptable by the general standards of the construction industry in Southern California ("Industry Standards"), the condition is to be brought to the attention of Owner in writing.  If Contractor fails to do so and proceeds with the Work, all repair, re-work, patching, and subsequent costs shall be borne by Contractor.

4.04        Verifications

The dimensions, grades and/or elevations shown in the Plans and Specifications are obtained from the best information available, but they are not guaranteed. Contractor shall verify existing dimensions, grades and elevations in the field and make adjustments as necessary at no additional expense to Owner or engineer. Contractor represents that it has reviewed the documents accompanying the bid instructions, has made an independent investigation of the Site, the Plans and Specifications, the Reports supplied by Owner, and all other known conditions that might affect the progress of the Work, as Contractor deems advisable, and has satisfied itself by such tests and examination. The Contract Sum includes payment for all Work that may be done by Contractor excepting those conditions that could not have been reasonably foreseen by fully qualified and experienced expert contracting firm considering, without limitation, the aforementioned soil investigation and physical inspection of the Site, as well as Contractor's expert knowledge of the building conditions existing in the locality of the Project and the Industry Standards. Except as heretofore expressly provided, no plea of ignorance of conditions or limitations that exist or may arise affecting the Work or difficulties in performing the Work will be acceptable by Owner as an excuse for any failure or omission by Contractor or for extra compensation, or as a basis for any extension of time in which to complete performance of the Contract.

4.05        Parties To The Agreement

Subject to the restrictions set forth in Section 13.03, this Contract shall be binding on Owner and Contractor, and their successors, heirs, executors, administrators, and permitted assigns.

4.06        Temporary Buildings And Trailers

Contractor shall provide and maintain sufficient temporary buildings and trailers for (a) the operation of its field organization, (b) the storage of materials and housing of machinery and tools, and (c) whatever else is necessary for the proper completion of the Work. Contractor shall remove such temporary buildings and trailers at the completion of the Project or within twenty-four (24) hours after notice by Owner.

4.07        Legal Requirements

It is Contractor's responsibility to make certain that the Work performed under this Contract is in accordance with all Legal Requirements.  Without limiting the generality of this Section, Contractor agrees that it will not engage in discriminatory employment practices in violation of any federal, state, or local law including any order or regulation of any agency authorized to enforce any such law. Contractor agrees to comply with Title Vii of the Civil Rights Act of 1964, Executive Order 11246, and all additional orders, regulations and amendments pertaining thereto, including certification of non-segregated facilities. Contractor agrees to furnish any additional information, certifications, and policies concerning Contractor's employment practices that Owner may require.

4.08        Veterans

Contractor agrees to comply with all applicable rules, regulations and relevant orders of the Secretary of Labor issued pursuant to the Rehabilitation Act of 1973 as amended, and the Vietnam Era Veterans Readjustment Assistance Act of 1974 as amended.

_____ Contractor's Initials                     Page 5 of 61                          _____ Owner's Initials

**4.09        Safety Requirements**

Contractor shall be responsible for initiating and maintaining the supervision of all safety precautions and programs in connection with the Work. Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:

    (a)    all employees on the Project and all other persons who could be affected or injured in connection with the Work;

    (b)    all the Work and all materials and equipment to be incorporated therein, whether in storage on or off the Site, under the care, custody or control of Owner, Contractor or any other Contractors for the project; and,

    (c)    other property at the Site or in the proximity thereof, including trees, shrubs, lawns, walks, pavement, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

Without limiting the generality of Section 4.07 above, Contractor specifically agrees to comply with and conform to all laws, ordinances and regulations of federal, state, county, city and other lawful authorities, including without limitation, those of any entity responsible for enforcing the Occupational Safety and Health Act of 1970 (29 U.S.C. Sec. 651 et seq.) or having jurisdiction for the safety of persons or property, or to protect them from damage, injury or loss. Contractor shall erect and maintain, as required by existing conditions and progress of the Work, all reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and an accident prevention program, and notifying Owner and users of adjacent property of the same. When the use or storage of explosives or other hazardous materials or equipment is necessary for the execution of the Work, Contractor shall exercise the utmost care and shall carry on such activities under the supervision of properly qualified personnel.

If Contractor, its employees, subcontractors or their employees fail to comply with all Legal Requirements, rules, or internal policies, Owner may give notice of default to Contractor and Contractor shall have 24 hours to correct improper conditions or within the time of an abatement period specified by any government agency, whichever period is shorter. Contractor's failure to cure the default within 24 hours of the notice shall give Owner the option of (1) performing such portion of the work or furnishing materials, equipment or other items necessary in Owner's sole discretion to avoid noncompliance with any applicable Legal Requirements, the cost of which shall be deducted from the Contract Sum or paid directly by Contractor if the cost exceeds monies due Contractor; or (2) may eject Contractor from the jobsite and perform the work itself or hire another contractor to perform the necessary work. The right to eject Contractor shall not be construed to deny Owner any other right or remedy available at law, by contract, or in equity. Contractor shall be liable for all damages suffered by Owner by reason of Contractor's default, and Owner's exercise of the option to eject Contractor shall not relieve Contractor of that liability.

Contractor shall designate a Project Manager at the Site whose duty shall be the prevention of accidents.

Contractor shall not load or permit any part of the Work to be loaded so as to endanger its safety.

Contractor acknowledges that adjacent property might be under construction concurrently and agrees to use special care and to take all possible steps to prevent any interference with or impairment of such neighbors' use and enjoyment of the surrounding property. Contractor is responsible for any damage it causes to above ground or underground utility services.

**4.10        Field Organization**

Contractor shall provide a competent and qualified superintendent ("Project Manager") who shall be appointed, retained and/or changed subject to Owner's reasonable directions, and such skilled and common laborers as the Work may require. The Project Manager will initially be the person designated in Exhibit "NIC" to the Agreement and may not be changed, except with the prior written consent of Owner, unless the Project Manager ceases to be in the employ of Contractor. If the Project Manager ceases to be in Contractor's employ, Contractor shall immediately replace him or her with a person approved by Owner. The Project Manager shall represent Contractor and all instruction or notices given to the Project Manager shall be binding upon Contractor. Instructions given to the Project Manager shall be as binding as if given to Contractor. Contractor shall supervise and coordinate the Work and shall monitor the progress of the Work against the Project Construction Schedule. Contractor shall maintain at the Site for Owner one copy of all approved shop drawings, samples, specifications, drawings, modifications and schedules in good and current order. Contractor shall attend the periodic Job Site Meetings described in Section 4.12, as conveyed by Owner and shall prepare and deliver to Owner, not less frequently than weekly, verbal status reports detailing the progress in completing the Work, identifying the next week's activities and describing thoroughly any actual or anticipated problems (for any reason) relating to or affecting timely performance or changes in the sequence of the Work. Such status reports shall be given by the Project Manager and received by Owner's representative (or through such other persons as are agreed upon in writing) explaining any anticipated problem areas. Status reports shall be in writing, if requested by Owner on a monthly basis.

The selection of Project Team shall also be subject to Owner's prior written approval. After selection of Project Team, Contractor shall not remove or replace any members of the Project Team, or add any new members to the Project Team, without Owner's prior written approval. Owner shall have the right to require the removal of any Project Manager or other member of the Project Team at any time with or without cause, in which case Contractor shall promptly terminate such member and replace such member with a new member acceptable to Owner.

Contractor shall at all times enforce strict discipline among its employees and shall not hire any unfit persons for Work on the Project or any persons not competent to complete properly the Work to which they are assigned.

Contractor shall make and shall cause its Subcontractor to make, all payments when and as required on account of the Work to any governmental authorities (whether taxes or other payments) or to any pension or other fund, trustor plan (whether or not established pursuant to collective bargaining agreement) and shall promptly furnish to Owner satisfactory evidence of such payments. Contractor shall work in harmony with any other contractors or persons performing services on or near the Project or in connection with other phases of Owner's development of the Project or the real property of which the Project is part.

**4.11        Coordination**

Contractor's Initials                       Owner's Initials



Contractor is responsible for coordination of its Work with all other trades working in the areas covered under the Contract. Contractor will coordinate all deliveries and field Work with Owner's Authorized Representative.

4.12      Job Site Meetings

Owner will hold meetings at the Site of the Project ("Job Site Meetings") at the times listed in the Project Construction Schedule. Owner reserves the right to change add or cancel job site meetings as the progress of the Project dictates. Contractor's Project Manager must attend each Job Site Meeting unless he obtains Owner's written permission not to attend. Except for those Job Site Meetings from which Contractor is excused, Contractor is deemed (a) to have received all exhibits, amendments and other documents distributed at Job Site Meetings, (b) to be on notice of all comments made at such meetings, and (c) to have consented to all decisions, modifications and/or omissions regarding the Project made or expressed at the Job Site Meetings by Owner.

4.13      Shop Drawings and Samples

Contractor shall submit all samples, submittals and shop drawings to Owner as provided by the Plans and Specifications unless otherwise stated herein.

Contractor shall advise Owner in writing of any material deviation in the submittals, shop drawings or samples from the requirements of the Contract. No such submissions shall relieve Contractor from responsibility for errors or omissions in the submittals, shop drawings or samples.

4.14      Expense Allocation

All licenses, fees, taxes, royalties, or patent fees allocable to the labor, materials, or equipment furnished or installed under the Contract shall be secured and paid for by Contractor.

4.15      Removal Of Employees

Owner reserves the right to demand and enforce the removal of Contractor or any employees thereof who is intoxicated or consuming alcoholic beverages or drugs on the job site, or not complying with OSHA requirements, and Contractor is responsible for any delays and costs associated therewith.

4.16      Punch List Items

Contractor shall be required to commence Work on all punch list items within seventy-two (72) hours from the receipt thereof. Should the items not be completed within five (5) days of commencement, Owner shall have the right to have the Work done by others without notice and the cost thereof shall be backcharged to Contractor.

4.17      Guarantees & Manuals

Upon Substantial Completion, Contractor shall furnish to Owner one (1) copy approved by Owner of all warranties, guarantees and operating manuals relative to equipment installed. Contractor shall also provide to Owner one (1) additional copy approved by Owner of all warranties, guarantees and operating manuals relative to equipment installed in each Unit constructed, prior to that Unit's completion.

4.18      Compliance with all Storm Water Pollution Prevention Requirements

Contract shall comply will all requirements and conditions of the State Water Resources Control Board, National Pollutant Discharge Elimination System General Permit for Waste Discharge Requirements for Discharges of Storm Water Runoff associated with Construction Activity (the "Permit") for all Work. Owner at the Project Site will maintain a copy of the Permit and the Storm Water Pollution Prevention Plan ("SWPPP") for the Project. It shall be the Contractor's responsibility to review the SWPPP and to attend all SWPPP meetings held by Owner. Contractor shall comply with all requirements of the State Water Resources Control Board, Regional Water Quality Control Board and all Legal Requirements of any applicable municipality, County, City, drainage district, and other local agencies regarding discharges of storm water, including applicable requirements in municipal storm water management programs. Contractor agrees that all costs of Contractor's compliance with storm water requirements have been included in the Contract Sum or shall be borne by Contractor. Contractor hereby agrees to and does indemnify, defend (with counsel reasonably acceptable to Owner) and hold harmless Owner, its officers, agents, and employees from and against any and all claims, demands, losses or liabilities of any kind or nature which Owner, its officers, agents, and employees may sustain or incur for Contractor's failure to comply with the Permit, the SWPPP or any law, rule or regulation, arising out of or in connection with the Project or this provision, except for liability resulting from the negligence or willful misconduct of Owner, its officers, agents or employees. Owner may seek damages from Contractor for delay in completing the contract caused by Contractor's failure to comply with Permit, the SWPPP or any law, rule or regulation, relating to Storm Water Pollution Prevention.

~~4.19      Prevention of Mold~~

~~Contractor will conform with all Legal Requirements and the highest standards of the industry in order to keep the Project free from mold, moisture and other conditions that may cause mold to be present. Without limiting the foregoing, Contractor will use reasonable precautions to avoid the presence of mold or moisture in any construction materials. Contractor will also comply with all Legal Requirements relating to the remediation of any mold that may be present within the Project at any time as a result of the Work.~~

~~4.20      As-Built Drawings~~

~~As a condition precedent to Substantial Completion, Contractor will provide as-built drawings showing the Work as actually installed in accordance with all requirements of applicable governmental authorities.~~

**Article 5: Insurance, Indemnity & Bonding**

**5.01        Insurance**

Owner has obtained an Owner controlled insurance policy as described in the OCIP Addendum attached to the Contract as Exhibit "E" and a builder's risk policy. Contractor will maintain all insurance required to be obtained by Contractor under the OCIP Addendum and will comply with all other insurance obligations applicable to Contractor under the OCIP Addendum.

**5.02        Indemnity**

For purposes of this Section, a "Claim" or "Claims" is any notice of claim, notice of commencement of legal proceeding, claim, demand, obligation, cause of action, damage, loss, liability, judgment, cost or expense (including, without limitation, attorneys' fees and costs, expert witness fees and costs and other litigation, mediation, arbitration or judicial reference expenses), of every kind or nature, whether based on tort, contract, or equitable principles, in any way arising from or in any way connected with the performance or nonperformance of this Contract and/or the construction of the Work by Contractor or its employees, agents, officers, directors, shareholders, partners, members, representatives, affiliates, independent contractors, suppliers, subcontractors, anyone employed directly or indirectly by any of them or for whose acts they may be liable, and its and their successors or assigns (collectively, "Contractor Parties").

        A Claim includes, without limitation:

        (i)        Property damage, including, without limitation, damage to both real and/or personal property, whether or not such property was manufactured by Owner; costs to repair defects in property, diminution in property value, loss of use, loss of economic value, consequential losses, and any other damages associated with damage to, destruction of, defects in, or loss of real or personal property caused or alleged to be caused in whole or in part by any act or omission to act of Contractor or any Contractor Party.

        (ii)        Personal injury, including, but not limited to, without limitation, bodily injury, emotional injury, sickness or disease, or death to persons, including, without limitation, loss of use and enjoyment, emotional injury to, sickness or disease or death of persons including, without limitation, agents, guests or invitees of a homeowner, Contractor, Owner or any other contractor caused or alleged to be caused in whole or in part by any act or omission to act of Contractor or any Contractor Party.

        (iii)        Penalties and/or response costs imposed on account of the violation of any Legal Requirement caused by the act or omission to act of Contractor or any Contractor Party. Any violation or infraction by Contractor of any Legal Requirement in any way relating to the occupational health or safety of employees.

        (iv)        Infringement of any patent rights which may be brought against Owner arising out of or connected with the Work. Claims and liens for labor performed or materials used or furnished to be used in connection with the Work, including incidental or consequential damages resulting to Owner from such Claims or liens.

        (v)        Costs incurred by Owner in the good faith settlement of any lawsuits, Claims under the Right to Repair Act or any similar statute, and Claims in connection with investigations brought by third parties, including, without limitation, the California Department of Real Estate and/or Contractor's State License Board of the State of California.

        (vi)        Costs incurred by Owner if (i) Owner repairs any Work that fails to comply with the standards set forth in the Right to Repair Act, (ii) if the owner of any residence within the Project or the homeowner's association for the Project elects to have a repair made by a contractor other than Contractor as provided in said Right to Repair Act, (iii) arising from or relating to non-compliance with California Labor Code Section 2810 by Contractor and/or (iv) based on duties, obligations, or liabilities imposed on the Indemnities by all legal requirements and Claims based on theories of peculiar risks or non-delegable duty or arising from conditions of the workplace.

        (vii)        Liens, as set forth more fully in Article 10.

The term "Indemnities" means Owner and its members, managers, shareholders, partners and affiliates, and the officers, directors, shareholders, insurers, representatives, agents, employees, successors and assigns of all such parties.

The term "Non-Indemnified Claims" means (i) claims for construction defects, to the extent such claims arise out of, pertain to, or relate to (a) the negligence of Owner or Owner's other agents, other servants, or other independent contractors who are directly responsible to Owner (collectively, "Owner Parties"), or (b) defects in design furnished by the Owner Parties, (ii) claims for construction defects, to the extent the claims do not arise out of, pertain to, or relate to the scope of Work of this Contract, and (iii) claims that arise out of the sole negligence or willful misconduct of Owner.

Subject to the limitations set forth below, Contractor shall indemnify, defend (as more fully set forth below), and hold harmless the Indemnities from and against any and all Claims; provided, however, in no event shall Contractor be obligated to indemnify any Indemnity for a Non-Indemnified Claim. Contractor's obligation to defend and indemnify shall be triggered by the mere assertion of a Claim against any Indemnity and shall apply whether or not the Claim has any merit. Notwithstanding any provision of law that would otherwise limit Contractor's liability, Contractor shall be strictly liable under this indemnification provision for damage or injury resulting from any defects in the Work regardless of fault. Contractor's indemnity obligation shall continue until it is determined by final judgment that the Claim against the Indemnities is fully and finally barred by the statute of limitations, which may be expressly and/or impliedly tolled as to Contractor by Owner.

Nothing in Contractor's indemnity obligations shall be construed to negate, abridge or otherwise reduce any of Owner's other rights of indemnity which would otherwise exist. Contractor's obligation to indemnify shall also include claims based on duties, obligations, or liabilities imposed on the Indemnities by all Legal Requirements and Claims based on theories of peculiar risks or non delegable duty or arising from conditions of the workplace. In any and all Claims against any Indemnity brought by any Contractor Party, the indemnification

_____  Contractor's Initials                Page 8 of 61                _____ Owner's Initials

obligation hereunder shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for Contractor or any subcontractor under workers' or workman's compensation acts, disability benefit acts or other employee benefit acts.

Payments by Contractor on behalf of the Indemnities shall be in addition to any and all other legal remedies available to the Indemnities and shall not be considered the Indemnities' exclusive remedy.

Contractor's duty to defend the Indemnities is entirely separate from, independent of and free standing from Contractor's duty to indemnify the Indemnities, including, without limitation, the defense of the Indemnities against Claims for which the Indemnities (or any of them) may be strictly liable and applies whether or not the issue of Contractor's liability, breach of this Contract or other obligation or fault has been determined and whether or not the Indemnities (or any of them) have paid any sums or incurred any detriment arising out of or resulting directly from Contractor's performance of the Work. Contractor shall immediately defend (with legal counsel reasonably satisfactory to Owner) the Indemnities from and against any and all Claims. Notwithstanding the foregoing, however, if an entry of a non-appealable final judgment after trial or award after arbitration or a settlement agreement entered into by Owner and Contractor determines that a portion of the damages awarded were caused by or attributable to a Non-Indemnified Claim, Owner shall be obligated to reimburse Contractor for that portion of the defense costs reasonably incurred by Contractor which is attributable to a Non-Indemnified Claim.

Such defense obligation shall arise immediately upon written notice of Claim being provided to Contractor, and includes, without limitation, the obligation to defend all Indemnities with respect to any alternative dispute resolution proceeding authorized under this Contract as well as matters related to investigation and resolution of Claims, including, without limitation, Claims brought pursuant to statute by homebuyers, successive homebuyers or homeowners associations. It is the parties' intention that any of the Indemnities shall be entitled to obtain summary adjudication of Contractor's duty to defend and/or duty to indemnify the Indemnities at any time. Payment by any Indemnity to Contractor is not a condition precedent to enforcing such Indemnity's rights to indemnification and/or defense under this Contract.

~~Contractor's defense obligation shall apply regardless of the fault or negligence of the Contractor or any Contractor Parties, whether or not the Claim has any merit, and regardless of the fault, concurrent negligence (whether active or passive), any act or omission to act, or misconduct by any Indemnity.~~ Contractor's duty to defend the Indemnities includes, without limitation, the defense of the Indemnities against Claims for which any of the Indemnities may be strictly liable and applies whether or not the issue of Contractor's liability, breach of this Contract or other obligation or fault has been finally determined and whether or not any of the Indemnities have paid any sums or incurred any detriment, arising out of or resulting directly or indirectly from Contractor's performance of the Work.

Evidence of insurance procured by Contractor will be deemed admissible in any legal proceeding and/or arbitration for any purpose, including evidence that the parties expressly bargained for a commercially reasonable risk allocation. The indemnification obligations of Contractor under the Contract shall not be limited by the amounts or types of insurance (or the deductibles or self insured retention amounts of such insurance) which Contractor is required to carry under this Contract. The right to indemnification by Contractor shall be in addition to Owner's separate rights under the insurance to be provided by Contractor under this Agreement.

In the event of any action or proceeding, including, without limitation, litigation, arising out of Contractor's activities in connection with this Contract, Contractor shall not enter into any settlement (total or partial) with respect to such action or proceeding without the express prior written consent of Owner. Any such attempt to enter into a settlement without the required consent shall conclusively establish that the settlement is not in "good faith," within the meaning of California Code of Civil Procedure Section 877, et seq. Any such attempted settlement shall not prohibit Owner from proceeding against Contractor for contractual and/or equitable indemnity. Should Contractor attempt to settle any action or proceeding in violation of this provision, such attempt shall constitute a breach of this provision and shall provide a separate legal basis for which Owner may seek recovery available at law or in equity.

5.03      Bond

~~Owner may, at Owner's option, require Contractor to provide a payment and performance bond ("Bond") in the amount of the total Contract Sum. The bond shall be executed by a corporate surety acceptance to Owner and shall be in a form satisfactory to Owner. The premium paid by Contractor for the bond shall be reimbursed by Owner in an amount up to one percent (1%) of the Contract Sum. Any premium cost in excess of one percent (1%) of the Contract Sum shall be borne by the Contractor.~~

5.04      Certificate Of Insurance

A certificate of insurance must be on file at Owner's, California office prior to the start of any field construction Work. Upon notice to proceed, Contractor shall provide this original certificate of insurance, and submit it to the insurance company as directed. (See Exhibit "E") Additional Insured Endorsements naming Owner and its related entities, as required pursuant to Exhibit "E", shall also be provided to Owner before commencement of Work.

Article 6: Diligent Performance

6.01      Performance

Contractor agrees to commence and pursue the Work diligently, at such times and in such order as Owner may direct and to complete the same so as not to delay any other trades and to insure completion of the Work within the time specified herein, <u>time being of the essence of this Contract</u>. Any written dates furnished by Contractor and approved in writing by Owner for delivery of materials, samples, shop drawings, etc., shall become a part of this Contract. Contractor shall immediately notify Owner in writing of any interruption on the Project or late delivery which causes or may cause a delay in Contractor's performance. No extension of the Completion Date specified in the Project Construction Schedule shall be permitted unless approved in writing by Owner as provided herein, and Contractor shall be responsible for any losses or penalties incurred as a result of delays in completing its Work. Any premium time required to complete the Work shall not be charged to Owner unless specifically authorized in writing by Owner.

_Contractor's Initials_           _Owner's Initials_

Should Contractor fail to comply with the Project Construction Schedule, including, without limitation, the Commencement Dates, other significant milestone dates or the Completion Dates, or in Owner's opinion otherwise fail, refuse or neglect to supply a sufficient amount of labor or material in the prosecution of the Work, in addition to all other remedies, Owner shall have the right to (1) direct Contractor to furnish such additional labor and/or material as may be required to comply with the Project Construction Schedule or to otherwise diligently prosecute the Work, or (2) furnish such additional labor and/or materials as may be required to comply with the Project Construction Schedule. Any costs incurred by Owner pursuant to the exercise of its rights under this paragraph shall be borne by Contractor and shall not increase the Contract Sum. Owner will not be responsible for any overtime costs or similar charges required for Contractor to comply with the Project Construction Schedule.

**6.02        Materials and Workmanship**

All materials, supplies and fixtures used by Contractor for the Work shall be new and the best of their respective kinds. Upon request, Contractor shall furnish samples of, and information concerning, any materials, supplies or fixtures used. The Work shall be completed with first class workmanship, according to the best practices of the trades as judged by Industry Standards and to the satisfaction of Owner. The Work shall include any labor, services, materials, supplies, fixtures, tools or equipment reasonably implied by the Plans and Specifications or customarily furnished by a Contractor performing this type of Work whether or not shown or mentioned by the Plans and Specifications. Contractor agrees to construct the Work in strict conformance with the standards set forth in the Right to Repair Act. Under the Right to Repair Act, Owner is responsible for adhering to specified functionality standards set forth in Chapter 2 of the Right to Repair Act (hereinafter "functionality standards"). Contractor acknowledges that it is sufficiently familiar with the functionality standards (Chapter 2) of the Right to Repair Act that relate to its scope of Work. Contractor further acknowledges that Owner relies upon Contractor to perform its Work in full compliance with all applicable building codes, plans and specifications, and functionality standards. Contractor further agrees that it shall be solely responsible for any unmet functionality standards that relate to its Work. Contractor shall immediately bring any discrepancies or violations of functionality standards in Plans or Specifications to the attention of Owner prior to commencing its Work. If Contractor fails to bring said discrepancies or violations to Owner's attention, and subsequent claims are made by homeowners pursuant to the Right to Repair Act, Contractor hereby forfeits and fully waives its right to argue the existence of discrepancies or violations of functionality standards in Plans or Specifications in any subsequent pre-litigation procedure or other action.

**6.03        Terms Of The Essence**

The following items, without limitation, are specifically understood by Contractor to be of the essence of this Contract:

(a)    signing of this Contract;
(b)    submitting shop drawings, samples and submittals in accordance with specifications or as required by Owner;
(c)    ordering of materials and equipment and submitting to Owner written proof and confirmed delivery dates;
(d)    providing an adequate Work force to perform the Work and to meet the Project Construction Schedule;
(e)    submitting a Project Construction Schedule for all phases of the Work and projected delivery dates of all equipment and materials;
(f)    complying with all Legal Requirements, including OSHA safety regulations, and attending on-site job site and safety meetings;
(g)    performing all distribution, unloading, and hoisting of materials and equipment; and,
(h)    delivery of the insurance certificate provided in Section 5.04

**6.04        Contractor's Representatives**

Contractor acknowledges that Owner selected Contractor for this Project because of Contractor's special expertise in constructing similar projects. The Contractor represents and warrants the following to Owner (in addition to any other representations and warranties contained in the Contract) as a material inducement to the Owner to execute this Contract, which representations and warranties shall survive the execution and delivery of this Contract, any termination of this Contract and the final completion of the Work:

(a)    Contractor is financially solvent, able to pay all debts as they mature and possessed of sufficient working capital to complete the Work and perform all obligations hereunder;
(b)    Contractor is able to furnish the tools, materials, supplies, equipment and labor required to complete the Work and perform its obligations hereunder and has sufficient experience and competence to do so;
(c)    Contractor is authorized to do business in the State of California and is properly licensed by all necessary governmental and public and quasi-public authorities having jurisdiction over the Contractor and over the Work and the Project;
(d)    Contractor's execution of this Contract and performance thereof is within the Contractor's duly authorized powers;
(e)    Contractor's duly authorized representative has visited the Site and is familiar with the local conditions under which the Work is to be performed and has correlated observations with the requirements of the Contract Documents;
(f)    Contractor is a sophisticated contractor who possesses a high level of experience and expertise in the business administration, construction, construction management and superintendence of projects of the size, complexity and nature of this particular Project and will perform the Work with the care, skill and diligence of such a contractor;

(g)    Project as designed in the Contract Documents;
    1)    is capable of being constructed as contemplated thereby and
    2)    shall be constructed in conformity with all Legal Requirements, the Contract Documents and generally accepted industry standards, practices and principles in effect at the time of performance; and
(h)    Upon completion of the Work, the Project as constructed will:
    1)    meet and comply in all material respects with all Legal Requirements;
    2)    not violate in any material respect any Legal Requirements;
    3)    contain no hazardous substances which are not permitted by governmental regulations; and
    4)    fully meet all requirements of the Contract.

Notwithstanding the foregoing, except for the Design Build Work, Contractor will not be responsible for the sufficiency of the design for the Project reflected in the Contract Documents.

_____ Contractor's Initials                    Page 10 of 61                    _____ Owner's Initials

6.05        Coordination of Work

Contractor acknowledges that construction of other phases of the overall Project may be conducted concurrently with the performance of this Contract. Accordingly, it shall be the responsibility of Contractor to fully coordinate its activities with those of all other contractors and with Owner to effectively prosecute the overall completion of the Project with a minimum amount of interference and to prevent discrepancies between the Work and any other portions of the Project. It is specifically understood that other work may be scheduled at the same time and in the same areas as the Work. If any part of Contractor's Work depends upon the proper execution of the work of any other separate contractor, Contractor shall inspect and promptly report to Owner in writing any apparent discrepancies or defects in such work that render it unsuitable for such proper execution. Failure of Contractor to so inspect and report shall constitute an acceptance of the other contractor's work as fit and proper to receive Contractor's Work and Contractor shall assume full responsibility for costs incurred by lack of proper fit. If Contractor's Work includes the installation of materials or equipment furnished by others, it shall be the responsibility of Contractor to examine the items so provided and thereupon handle, store and install the items with such skill and care as to ensure a satisfactory installation. Loss or damage due to acts of Contractor shall be charged to the account of Contractor and shall be deducted from monies due under this Contract. Contractor acknowledges that the Contract is intended to complement and agree with one another and to fit to provide a continuous, complete, well fit and coordinated finished Project. Contractor is responsible to use all of the Contract and to coordinate with other contractors, consultants, the City of Escondido, and Owner to provide Owner with a fully finished, complete and workable Project in conformance with the intent and spirit of the Contract. It is the Contractor's responsibility to verify that the plans all work well with one another and to schedule the Work sufficiently in advance of the commencement of any phase of the Work in order to minimize any delays and/or additional costs which may be encountered as a result of inconsistencies between any Contract and to use its sound and experienced business judgment to implement and carry through the information set forth in the Contract to produce a quality, finished Project. Contractor shall coordinate the Contractor's construction and operations with Owner's separate contractors. Costs caused by delays or by improperly timed activities or defective construction, to the extent caused by Contractor, shall be borne by Contractor.

6.06        Partial Occupancy

~~Owner may occupy or use any completed or partially completed portion of the Work at any stage. Without limiting the foregoing, Contractor acknowledges that the Project Construction Schedule specifies the dates for turnover by Contractor of the Units upon Substantial Completion of the Work within each such Units. Contractor will immediately advise Owner of any delays in the turnover of Units and will cooperate with Owner in connection with such turnover. Each Unit will be turned over by Contractor in a clean condition (including cleaning of all windows and floors) and otherwise in accordance with the Contract Documents. Owner and Contractor will perform a walk through inspection of each Unit being turned over and agree on a preliminary punchlist and list of other incomplete Work within such Unit without, however, limiting Owner's other rights under the Contract Documents. Contractor further acknowledges that Owner will have the right to close sales with purchasers of the Units and allow such purchasers to occupy such Units at any time after turnover of such Units and before final completion of all Work, and to allow tenants to occupy the retail space after turnover thereof, subject to any Legal Requirements applicable to such occupancy. Contractor agrees that after occupancy of the first Unit occurs, Contractor will use commercially reasonable efforts to perform the Work in a manner that will minimize the interference with the use and enjoyment of the occupied Units or retail uses. Owner will be responsible for the cost of any utilities used during any such partial occupancy.~~

6.07        Acceleration of Work

If Owner desires the Work to be performed with greater speed than is herein contracted for, Contractor shall, without affecting or abridging the rights of Owner set forth in the Contract, upon receipt of a written order from Owner, employ overtime work as so ordered. The increase in cost of such overtime work as demonstrated by *time slips* checked and approved each day by Owner shall be paid by Owner pursuant to a Change Order executed by Contractor and Owner.

6.08        Contractor's Proposed Punch List

When Contractor considers the Work, or any portion thereof which Owner agrees to accept separately, to be substantially complete, Contractor shall prepare and submit to Owner a punch list of items to be completed or corrected. Within seven (7) calendar days after receipt of Contractor's punch list, Owner will make an inspection of the Work and shall advise Contractor in writing of any objections to or omissions from Contractor's list.

Article 7: Payment

7.01        Method Of Payment

Owner agrees to pay Contractor the Contract Sum. This Contract Sum shall be payable in progress payments in proportion to the degree of completion of the Work during any calendar month. The payment shall total ninety (90%) of the amounts requested by Contractor. No payments will be considered due until Contractor has complied with Section 5.04 and has furnished Owner with proof that Contractor is licensed to do business by the state of California. Owner will retain the remaining ten percent (10%) of each payment applied for, which will subsequently be paid pursuant to Section 7.04, below. Contractor's invoice must be accompanied by a copy of the agreed upon Schedule of Values described on Exhibit "B-4" on which Contractor has completed the applicable spaces therein. The invoice must receive written certification by Owner and must include conditional lien waivers in the total amount of payment requested from Contractor and all Subcontractors and unconditional lien waivers from such parties for the prior month's payment before Owner will pay any amounts requested in the invoices. Such lien waivers must be in the applicable form required by California law.

On the twenty fifth (25th) day of each month, or as otherwise provided for in the Contract, Contractor shall submit to Owner an itemized application for payment ("Invoice"), with such detail and supported by such data substantiating Contractor's right to payments as Owner may require. Owner will attempt to determine, based on its observations at the Site and the data comprising the Invoice, whether the Work has progressed to the point indicated therein; whether, based on such observations, the quality of the Work is in accordance with the Contract (subject to (a) an evaluation of the Work for conformance with the Contract upon completion, (b) the results of any subsequent tests required by the Contract, (c) minor deviations from the Contract correctable prior to completion

*ᴵᴺᵛ* Contractor's Initials                    Page 11 of 61                    *A* Owner's Initials

and (d) any other qualification stated by Owner; and, whether Contractor is entitled to the progress payment applied for. If Owner approves such Invoice, it will make payment on or before the end of the following calendar month after Owner's timely receipt of an Invoice. By making payment, however, Owner shall not thereby be deemed to have accepted any portion of the Work, to have made on-site inspections to check the quality or quantity of the Work to have reviewed the construction means, methods, techniques, sequences or procedures, or to have ascertained how or for what purpose Contractor has actually used the moneys previously paid. If payments are to be made on account of materials or equipment not incorporated in the Work but delivered and stored at the Site, or at some other location agreed upon in writing, such payments shall be conditioned upon submission by Contractor of bills of sale or such other procedures satisfactory to Owner to establish title to such materials or equipment or otherwise to protect Owner's interests including the application of insurance and transportation to the Site. No such payments shall be made until materials or equipment have been incorporated in the Work if so required by any applicable Lender. In any event, Owner, Architect and Engineer shall not be liable for loss or damage and Contractor shall bear all risk of loss to any materials or fixtures until accepted by Owner, whether such material or fixtures are on-site or in transit.

Contractor warrants and guarantees that title to all Work, materials and equipment covered by an Invoice, whether incorporated in the Project or not, will pass to Owner upon the receipt of such payment by Contractor, free and clear of all liens, claims, security interests or encumbrances (collectively referred to in this article as "liens"); and that no Work, materials or equipment performed or supplied by Contractor, or by any other person performing the Work at the Site or furnishing materials and equipment for the Project, are subject to an agreement under which an interest therein or lien thereon is retained by the seller or otherwise imposed by Contractor or such other person.

7.02    Payment Withheld

Owner may decline to approve an Invoice and may withhold payment, in whole or in part, to the extent reasonably necessary to protect Owner. Owner may also decline to approve any Invoice or, because of subsequently discovered evidence or subsequent inspections, may nullify the whole or any part of any payment previously paid, to such extent as may be necessary in its opinion to protect Owner from loss because of:

    (a)    Defective Work not done according to the Plans and Specifications and acceptable standards of workmanship;
    (b)    Third party claims filed or circumstances indicating probable filing of such claims;
    (c)    The unjustifiable failure of Contractor to make payments properly to Subcontractors;
    (d)    Reasonable doubt that the Work can be completed for the unpaid balance of the Contract Sum;
    (e)    Damage to Owner, another contractor or a Subcontractor;
    (f)    Circumstances indicating that the Work will not be completed within the time required;
    (g)    Unsatisfactory prosecution of the Work by Contractor;
    (h)    Failure of Contractor to provide insurance certificates and endorsements as required in Exhibit "E"; or
    (i)    Any other default under the Contract by Contractor.

Contractor will not be entitled to stop or delay the Work due to any amounts withheld by Owner pursuant to this Section.

7.03    Payments By Owner

Should Contractor neglect, or without justifiable cause, refuse to cause to be paid promptly any bill or charge legitimately incurred by it in performing the Work as required hereunder, Owner, after giving Contractor five (5) days written notice of its intention to do so, shall have the right, but not the obligation, to pay such bill directly, and Contractor shall immediately reimburse Owner for same. If Contractor does not promptly make such reimbursement, Owner may offset the amount of such bill plus interest against amounts owed by Owner to Contractor hereunder, or because of any other liability or obligation of Owner to Contractor.

7.04    Final Payment

The balance of the Contract Sum shall be paid to Contractor forty-five (45) days after the Work is completed and accepted by Owner. The balance of the Contract Sum is subject to Owner's right to offset as provided in this Contract. Notwithstanding any other provision of this section, if corrective Work or repair remains to be accomplished after the Project is ready for occupancy, then pending completion of such Work, payment of a sufficient amount in the opinion of Owner to pay for the fair value of completing the Work may be withheld. No such acceptance by Owner shall be effective until the requirements of Section 4.17 hereof have been satisfied. Final payment shall not constitute an acceptance and/or waiver of Contractor's Work with respect to actual or alleged defective construction.

7.05    Direct Payment

Owner may, in its sole discretion, make any payments required under this Contract by (a) paying any Subcontractor directly or (b) issuing joint (dual) checks for such payments to Contractor and any such Subcontractor, or material supplier.

7.06    Contacting Owner

Contractor understands and agrees that it shall deal only with Owner's Authorized Representatives, and shall handle all matters connected with the agreement, the Work, or the furnishing of the materials or payment therefore, exclusively through Owner, unless otherwise directed in writing by Owner.

Article 8:    Alterations or Additions/Deletions from the Work

8.01    Modifications

At any time during the progress of the Work, Owner may order modifications, alterations, or deviations in the Work or may order additional Work not covered by the agreement (collectively, "Modifications"). If Owner should order a Modification, such action shall

in no way invalidate the Contract. Contractor shall perform any Modification, which consists of a change (increase or decrease) in the Work.

If Owner and Contractor cannot agree on a lump sum price or unit price for the Modification, Contractor agrees to perform the Work required by the Modification on the basis of the net increase in the Cost of the Work caused by such Modification plus Contractor's Fee thereon. Owner is not obligated to pay for any Modification by Contractor unless Owner expressly authorizes the Modification in writing. If Contractor performs any such authorized Modification on a Cost of the Work basis, it shall furnish each day to Owner's Authorized Representative, duplicate payroll sheets, material tickets, and a statement for all other charges, retaining a copy of each thereof, and securing on each thereof the signature of Owner's Authorized Representative, such signed copies of payroll sheets, material tickets, statements and slips shall accompany all bills and vouchers presented with an invoice.

8.02        Impact Of Modifications

If Owner orders a Modification, or makes a request for consideration of a possible Modification, Contractor shall provide to Owner, within a reasonable time not to exceed one (1) working day, a written report stating the estimated cost of such Modification and estimated time to incorporate it into the Work and the impact, if any, upon the Contract Sum and the Project Construction Schedule; provided, however, that only the net increases in the cost of all Modifications (whether increasing or decreasing the scope of the Work) will be subject to the hourly rate given in Section 8.01, likewise, any actual cost savings to Contractor occasioned by Modifications shall reduce the amount of the contract price by the full amount of the cost savings. Contractor shall not proceed with any additional Work unless and until Owner approves the Modification in writing.

8.03        Construction Progress Schedule & Modifications

The time allowed under the Project Construction Schedule for Contractor to complete the Work shall be extended or reduced by the amount of the time agreed by Owner and Contractor with respect to making the Modifications and the Project Construction Schedule shall automatically be changed accordingly.

8.04        · Difficulties Or Inconveniences

No Modifications will be allowed for difficulties or inconveniences arising from mud, dust, water, ice, snow, wind, heat or cold or similar natural or physical conditions. Owner assumes no responsibility for material received, unloaded or stored for or by Contractor. Materials, tools, supplies, equipment, etc., belonging or leased to Contractor are its responsibility and no claims for missing or stolen property will be allowed until such items are delivered or installed at the Project, and accepted by Owner. Owner shall provide temporary power and water, but Owner shall not be required to provide hoisting facilities or temporary heat unless otherwise provided herein.

Article 9: Default

9.01        Termination Of Agreement

If the Contract is terminated prior to the completion of the Work, Contractor shall be entitled only to payment for the Work actually completed at the pro rata of the Contract Sum unless Owner received additional compensation or damages on account of such termination; in which event, Contractor shall be entitled to such proportion of the additional compensation or damages actually received as is equitable under all of the circumstances. Nothing contained herein shall require the Owner to make any claim for such additional compensation or damages in the event of termination before completion, and it is specifically agreed that the failure of Owner to prosecute any such claim shall not entitle Contractor to any claim for additional compensation or damages against Owner. Notwithstanding anything to the contrary herein, Owner reserves the absolute right to terminate this Contract at any time; said right shall be Owner's right solely and Contractor shall have no right to terminate this Contract. In the event of termination without cause, Contractor shall be entitled to payment only as follows:

(1)        Cost of the Work actually completed in strict conformity with this Contract; plus,
(2)        Other costs actually incurred for this Work by Contractor, excluding overhead and profit.

There shall be deducted from such sums as provided in this paragraph the amount of any payments made to Contractor prior to the date of termination of this Contract. Contractor shall not be entitled to any claim, or claim of lien, against Owner for any additional compensation or damages in the event of such termination.

9.02        Owner's Right To Stop Work

Notwithstanding anything to the contrary herein, if Contractor fails to correct defective Work or fails to supply materials or equipment in accordance with the Contract, Owner may order Contractor to stop the Work or any portion thereof until the cause for such order has been eliminated. Further, if Contractor defaults or neglects to carry out the Work in accordance with the Contract or fails to perform any provision hereof, Owner may, after seventy-two (72) hours written notice to Contractor, make good such deficiencies, unless the same shall have been fully remedied, and without prejudice to any other remedy it may have, in such case, an appropriate written modification shall be issued deducting from the payments then or thereafter due Contractor, the cost of correcting such deficiencies, including the cost of additional architectural and engineering services, if any, if the payments then or thereafter due Contractor are not sufficient to cover such amount, Contractor shall pay the difference plus interest to Owner, upon demand.

9.03        · Default

If Contractor shall, in the sole judgment of Owner, (1) become insolvent, (2) file or have filed against it any petition in bankruptcy or similar insolvency proceeding, or make a general assignment for the benefit of creditors, (3) fail to pay, when due, for materials, supplies, labor, or other items purchased or used in connection with the Work, (4) fail in any respect to prosecute the Work with promptness, in a workmanship like manner, and/or with diligence in strict accordance with the Contract and the Project Construction Schedule, (5) fail or refuse to supply sufficient properly skilled supervisors, workers, or materials, tools, equipment, or supplies of the

_~W_ Contractor's Initials                    Page 13 of 61                    _K_ Owner's Initials

proper quality, or (6) commit any other breach of this Contract, then Owner may, if it so elects, notify Contractor in writing that Contractor is in default, specifying the nature of the default. If, after five (5) days (or such longer time not to exceed thirty (30) days as Owner, may reasonably grant if requested by Contractor, said grant of additional time not to be unreasonably withheld, so long as such default is curable, Contractor commences to cure such default within such five (5) day period and thereafter diligently and continuously pursues such cure to completion and such default will not materially affect the Project Construction Schedule), Contractor has not cured the default in Owner's sole discretion, Owner may by written notice terminate this Contract and/or exercise any and all other remedies available at law or in equity.

In such event, Owner may take possession of all materials, rented equipment, tools and appliances belonging to or under the control of Contractor, and may finish the Work by whatever method it may deem expedient, including the hiring of other contractors or Contractor's subcontractors under such form of control as Owner may deem advisable and accepting an assignment of such subcontractors. In this case, Contractor shall not be entitled to receive any further payment under this Contract until the Work undertaken by Owner is completed and Contractor shall be liable for and shall immediately and unconditionally pay to Owner all expenses incurred by Owner in excess of the Contract Sum for furnishing materials and finishing the Work, attorneys' fees and costs and any other damages sustained by Owner by reason of Contractor's default; and Owner shall have a lien upon all materials, tools and appliances taken possession of, as aforesaid, to secure the payment thereof.

The materials, supplies, equipment and tools taken by Owner may be used in completing the Work and may be incorporated into the improvements being constructed. With respect to any such items, the net reasonable value of the same shall be credited against the aforesaid total completion costs, damages and expenses.

In the event Owner does not terminate this Contract, but assents to delayed completion of the Work by Contractor, such assent shall not be construed as a waiver of Contractor's obligation to reimburse Owner for any costs, damages or expenses incurred as a result of such delay; and, subject to Section 14.3 above, all such costs, damages and expenses shall be paid or reimbursed to Owner promptly upon demand.

## Article 10: Liens

Contractor shall defend, indemnify and hold Owner and any applicable lender harmless from and against any and all mechanic's liens, stop notices, or claims served with respect to the project or construction funds therefore by any claimant arising out of or in any manner connected with the performance of this Contract. Contractor shall at its own expense, defend any and all actions based upon such liens, stop notices, or claims and shall pay all charges of attorneys and all costs and other expenses arising therefrom; if Contractor should fail to defend any such action as to which Owner, engineer, and/or lender is a party, Owner and/or engineer may defend itself and/or lender with counsel of its choice at Contractors expense. Such indemnity and defense will be provided in accordance with the terms of Section 5.02.

If any such lien, stop notices, or claim is recorded or served with respect to the Project or construction funds therefore by a claimant arising out of or in any manner connected with the performance of this Contract, Contractor shall, immediately and at its own expense, record or file, or cause to be recorded or filed, in the office of the county recorder in which such lien or claim was recorded, or with the person(s) on whom such stop notice was served a bond executed by a good sufficient surety, and approved by Owner, in a penal sum equal to one and one-half (1 ½) times the amount of such lien, stop notice, or claim, which bond shall guarantee the payment of any amounts which the claimant may recover on the lien, stop notice or claim together with the claimant's costs of suit in the action if he recovers therein.

## Article 11: Warranty

In addition to all other expressed or implied warranties, Contractor warrants that all Work shall conform to the Contract, samples or other descriptions furnished or adopted by Owner and all workmanship, materials and services furnished will be of good quality, free from faults and defects and in conformance with all Legal Requirements bearing on the performance of the Work. All Work not conforming to these requirements may be considered defective. If, within the earlier of (i) eighteen (18) months after the date of final completion of the Project or (ii) with respect to the Unit affected by the fault or defect, twelve (12) months after the conveyance of such Unit to the initial homeowner (the "Warranty Period"), any of the Work is found to be defective or not in accordance with the Contract, Contractor shall correct it promptly after receipt of written notice from Owner to do so. This obligation shall survive both final payment for the Work and termination of the Contract. All guarantees and warranties will inure to the benefit of Owner, its successors and assigns. Contractor shall also insert the terms of this provision in all subcontracts and/or agreements executed in connection with the services to be performed under the Contract and shall pass such provision to its subcontractors.

During the Warranty Period set forth in the Contract Documents, in connection with the performance of the Work by the Contractor, Contractor hereby agrees that:

(b) It will within 48 hours from written notice thereof (Saturdays and Sundays excluded unless an emergency exists) start to correct any and all deficiencies in the Work (and thereafter diligently proceed to completion) at Contractor's sole cost and expense;

(c) The determination as to what constitutes a deficiency or an emergency will be within the sole discretion of the Owner, whose judgment will be reasonably exercised;

(d) Failure of the Contractor to make timely performance hereunder will constitute sufficient cause for the Owner to cause the correction of such deficiencies to be performed by others. Further, the cost of such Work will be charged to the Contractor and such cost plus a sum equal to 15% thereof (which additional sum will represent an allowance for the administration by the Owner of such Work) will be charged against the account of the Contractor. If the amount owing the Contractor under this Agreement at the time such Work is performed by others is less than the sum charged against its account, the Contractor will remit the difference to the Owner within five (5) days following Owner's request therefore.

Contractor acknowledges that, both during the Warranty Period and any time thereafter, Owner may require Contractor to respond to complaints by owners of the Units within the Project or the homeowner's association, even if the Work is not defective. If Owner directs Contractor to perform any such work, then Contractor shall perform such work within 48 hours from written notice thereof (Saturdays and Sundays excluded) and the parties will execute a Modification whereby Owner will pay to Contractor the Cost of the Work plus Contractor's Fee.

The Contractor's warranty will not be restricted by any manufacturer's warranty or subcontractor's warranty (or the lack of any subcontractor's warranty). Contractor agrees that it will not cause, or allow any subcontractor to install any product or procedure which voids any warranty. The Contractor is responsible for subcontractors installation and/or non-performance on warranty work. The refusal of a subcontractor or supplier to correct defective work for which it is responsible will not excuse the Contractor from performing under the Warranty. The Project must function as an integrated whole and therefore the Warranty Period for all Work regardless of the phase will commence upon final completion of the entire Project. This Warranty Period shall not limit the terms of any special warranties given with regard to any portion of the Work and relates only to the specific warranty of Contractor, subcontractors and material suppliers to correct the Work. Notwithstanding such Warranty Period, Owner will be entitled, at any time, to enforce the obligation to comply with the Contract Documents and to commence proceedings to establish Contractor's or subcontractor's or material supplier's liability with respect to its obligations. Notwithstanding the foregoing, the Warranty Period shall be ten (10) years for the roof of the Project.

Contractor agrees to perform the Work in conformance with the standards set forth in the Right to Repair Act. Contractor further agrees to cooperate with Owner in connection with any matters relating to the Right to Repair Act, including, without limitation, at Owner's request, participating in the prelitigation procedures set forth in California Civil Code Sections 910 through 938, as the same may be amended ("Prelitigation Procedures"), including, without limitation, making all required repairs. If Contractor fails or refuses to participate in any Prelitigation Procedures, Owner will have the right to correct any defective Work, and Contractor must reimburse Owner immediately upon demand for the cost thereof together with any and all resulting damages. If the owner of any Unit within the project or the homeowners association elects to have another Contractor perform any work to address any defective Work pursuant to the Right to Repair Act, then Contractor must reimburse Owner immediately upon demand for all costs thereof together with any resulting damages. Contractor will provide to Owner prior to completion of the Work, all documents prepared as part of the Work that are described in California Civil Code Section 912, as the same may be amended.

Nothing in this Section shall limit the liability or responsibility which Contractor may have as provided in law or in equity.

**Article 12:  Destruction Of Work By Fire, Elements, Etc.**

12.01          Reconstruction

In the event the Work is wholly or partially damaged or destroyed at the Project Site through no fault of Contractor by fire, storm, lightning, flood, earthquake, tidal wave, surface or subsurface water, mud violence, vandalism or other casualty or force majeure events before the final completion of Work, Contractor, upon written instruction from Owner, shall proceed to replace and/or repair the Work. In such event, the provisions of this Contract shall remain in full force and effect, except that, pursuant to a Modification executed by Owner, the Contract Sum shall be increased by the Cost of the Work (plus Contractor's Fee) for removing and replacing all damaged and destroyed Work and the time for completion shall be extended for a reasonable period to be determined between Owner and Contractor.

12.02          Option To Terminate

In the event of any such damage or destruction to the Work by any of the above mentioned causes, caused through no fault of Contractor, Owner may, within sixty (60) days from the date of such damage or destruction, upon giving written notice to Contractor, elect to terminate this Contract. In such case, Owner shall pay Contractor for all costs of the Work completed to the date of such notice, all according to the terms of Article 7 hereof.

**Article 13:  Miscellaneous**

13.01          Choice Of Law

This Agreement has been negotiated and entered in the State of California and shall be construed, interpreted and enforced in accordance with the laws of the state of California.

13.02          Attorneys' Fees

If any action, arbitration, judicial reference or other proceeding is instituted between Owner and Contractor in connection with this Contract, the losing party shall pay to the prevailing party a reasonable sum for attorneys' and experts' fees and costs incurred in bringing or defending such action or proceeding and/or enforcing any judgment granted therein, all of which shall be deemed to have accrued upon the commencement of such action or proceeding and shall be paid whether or not such action or proceeding is prosecuted to final judgment. Any judgment or order entered in such action or proceeding shall contain a specific provision providing for the recovery of attorneys' fees and costs, separate from the judgment, incurred in enforcing such judgment. The prevailing party shall be determined by the Trier of fact based upon an assessment of which party's major arguments or positions taken in the proceedings could fairly be said to have prevailed over the other party's major arguments or positions on major disputed issues. For the purposes of this Section, attorneys' fees shall include, without limitation, fees incurred in the following:  (1) post-judgment motions; (2) contempt proceedings; (3) garnishment, levy, and debtor and third party examinations; (4) discovery; (5) any appeals; and (6) bankruptcy proceedings. This Section is intended to be expressly severable from the other provisions of this Agreement, is intended to survive any judgment and is not to be deemed merged into the judgment.

13.03          Assignment

It is agreed that neither this Contract nor the obligations or benefits hereunder shall be assigned by Contractor without the prior written consent of Owner, which may be withheld in Owner's sole and absolute discretion. This Contract is subject to approval by Owner and any applicable Lender. In addition, any right of approval, and right to notice, and/or right to benefit from insurance, warranties, indemnities or other provisions hereof also shall be exercisable by and shall run in favor of the Architect and any Lender, as third party beneficiaries of this Contract.

13.04    Use Of Counsel

Both parties hereto have been represented, by counsel of their choice, throughout the negotiations relating to and the drafting of the Agreement and any ambiguities herein shall be resolved as if both parties and their counsel drafted this Agreement.

13.05    Waiver and Severability

Every provision of this Contract is intended to be severable such that, if any term or provision hereof is illegal or invalid for any reason whatsoever, such provision shall be severed from this Contract and shall not affect the validity of the remainder of this Contract. A waiver of any breach or default under this Contract shall not constitute a continuing or further waiver of the same or any other breach or default hereunder.

13.06    Notices

Any notices required or permitted under this Contract may be given by certified or registered United States mail at the address of Owner and Contractor listed above, but such address may be changed by written notice by one party to the other from time to time. Notice shall be presumed received two (2) business days after deposit in the mail, postage prepaid or upon receipt if delivered personally or by telex or wire (telegram). Notwithstanding the foregoing, any notice of defect given pursuant to Article 11 above may be in either written or verbal form.

13.07    Time Of The Essence

All the time limits stated herein are of the essence of this Contract.

13.08    Dispute Resolution

Except as provided herein, all claims, disputes and other matters in question arising out of, or relating to this Contract or the breach thereof, shall be decided in accordance with the terms of the ADR Addendum (the "ADR Addendum") attached hereto as Exhibit "I" and incorporated herein. Notwithstanding the fact that a dispute, controversy or question shall have arisen in the interpretation of any provision of the Contract, the performance of any Work, the delivery of any material, the payment of any monies to Contractor, or otherwise, Contractor agrees that it will not directly or indirectly stop or delay any Work or part of the Work or stop or delay the delivery of any materials, pending the determination of such dispute or controversy in accordance with the terms of the Contract, provided that Contractor is paid for all undisputed amounts in accordance with the provisions of the Contract.

Notwithstanding the foregoing, disputes involving defect claims made by owners of the Units ("Homeowners") or by the homeowners association for the Project ("HOA") will be submitted to the non-adversarial statutory procedures set forth in Sections 910 through 938 of the Right to Repair Act. Contractor agrees to participate in any such procedures.

If the Prelitigation Procedures under the Right to Repair Act do not result in resolution of the Homeowners' or Association's claims and further action is pursued against Owner, Contractor agrees to participate in the procedures set forth in the ADR Addendum or whatever other dispute resolution process is required, including, but not limited to, binding arbitration, judicial reference and litigation.

13.09    Contractual Relations

All subcontractors for any portion of the Work will be subject to Owner's prior written approval. All Work performed for Contractor by a subcontractor shall be pursuant to an appropriate written subcontract between Contractor and the subcontractor, which shall contain provisions that:

(a)    Preserve and protect the rights of Owner under this Contract with respect to the Work to be performed under this Contract so that the subcontracting thereof will not prejudice such rights;

(b)    Require the Subcontractor to comply with Owner's insurance requirements as set forth in Section 5.01 and Exhibit "E" hereof;

(c)    Require that such Work be performed in accordance with the requirements of this Contract;

(d)    Require submission to Contractor of applications for payment under each subcontract to which Contractor is a party, in sufficient time to enable Contractor to submit invoices within the time and in the manner specified herein;

(e)    Require that all claims for additional costs, extensions of time, damages for delays or otherwise with respect to subcontracted portions of the Work shall be submitted to Contractor in sufficient time so that Contractor may comply in the manner provided in the agreement for like claims by Contractor upon Owner;

(f)    Waive all rights the contracting parties may have against one another for damages caused by fire or other perils covered by the property insurance described herein;

(g)    Require the subcontractor to participate, if required by Owner, in any dispute resolution procedures described in Section 13.08;

(h)    Incorporate the nondisclosure requirements contained in Section 13.11;

(i)    State that, at the option of Owner, such subcontract shall be assigned to Owner upon termination of this Contract;

(j)    Require the subcontractor to indemnify and defend Owner and the Indemnities to the full extent provided in Section 5.02; and

(k)    Include the warranty provision required by Article 11.

Contractor's Initials                    Page 16 of 61                    Owner's Initials

Contractor shall make available to each proposed subcontractor, prior to execution of any subcontract, copies of the Contract to which the subcontractor will be bound and each such subcontractor shall make available copies of applicable portions of such documents to their respective proposed subcontractors. In addition to the foregoing, all subcontracts shall contain the following sentence: "The Owner is an intended third party beneficiary of this Subcontract." All subcontractor agreements shall be submitted to the Owner for approval at least ten (10) days prior to the proposed commencement of their Work. Contractor shall unconditionally assign its interest in the subcontract documents to Owner, which assignment shall, at Owner's election, automatically become effective upon Contractor's default under the Contract Documents.

Nothing contained in the Contract shall create any contractual relationship between any subcontractor or supplier and Owner or create any obligation on the part of Owner to make payment of any sums to any subcontractor or supplier, or any other party not directly contracting with Owner. Contractor shall perform the Work strictly as an independent contractor and nothing herein shall in any manner create an employer/employee, agency, partnership or joint venture relationship between Owner and Contractor, or between Owner and any individual or entity engaged by, or under the direction of, Contractor in connection with the Work or the Contract. The Contractor has no right or authority of any kind to act as the representative, agent or on behalf of the Owner. It is Contractor's responsibility to assure itself that it will have the right to terminate or delay any subcontract in the event of the termination or delay of this Contract by Owner. Contractor is responsible to assure that all subcontractors under contract with it conform to all requirements of this Contract.

The Contractor shall within fifteen (15) days after commencement of the Work, implement a quality control management program with all subcontractors for the Work and shall report to the Owner periodically, but not less than two (2) times per month, as to the performance level of all subcontractors.

13.10    Protection of Materials, Work and Property

The Work is to be performed in such a manner that the Work or materials of other contractors is not to be damaged, covered up, misaligned or affected so that it will be necessary to redo or repair any other contractor's or subcontractor's work. Contractor shall at all times take all necessary precautions to protect and preserve all employees and other persons performing the Work or who may be affected thereby and all materials, equipment and supplies, as well as Owner's property of every description and all property, structures and improvements located adjacent to, or in the vicinity of the Project, from damage or loss, and shall assume full responsibility therefore until final acceptance of Owner. Contractor shall comply with all reasonable requests of Owner to protect said persons and property. If any such materials, equipment, or supplies of every description are not adequately protected from damage or loss by Contractor, such property may be protected by Owner and the cost thereof may be charged to Contractor or deducted from any payments due. Contractor shall also protect the property at the Site or adjacent thereto, including trees, shrubs, lawns, sprinkler systems, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

Contractor shall promptly remedy damage and loss caused in whole or in part by Contractor, a subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under this Contract, except damage or loss caused solely by the acts or omissions of the Owner. Contractor shall pay to Owner a sum equal to the difference between proceeds from insurance claims for losses incurred and the replacement value of any materials or equipment lost or damaged beyond repair or shall repair same, at Contractor's own expense, subject to Owner's acceptance and inspection, whenever Contractor is responsible for the loss or is in physical possession of the material or equipment. All material remains in the possession of Contractor until installed in its final, correct and permanent location. Loss of material through theft, damage, or otherwise prior to such installation is the Contractor's responsibility, except to the extent covered by insurance maintained by Owner. Contractor acknowledges that in some cases it may be difficult or impossible to determine whether Contractor and/or another contractor caused any damage to the Project and therefore agrees that the allocation of responsibility for damage in such cases shall be reasonably determined by Owner. Unless Contractor proves manifest error in such allocation by clear and convincing evidence, such determination shall be binding on Contractor.

13.11    Conflicts

In case of conflicts between this Contractor Agreement and any of the other instruments comprising the Contractor Agreement, the Contractor Agreement shall prevail.

13.12    Confidentiality

Contractor shall treat all information relating to the Project or supplied by Owner as confidential and proprietary information of Owner, and shall not disclose such information to other parties without Owner's prior written consent. Contractor shall require all subcontractors and vendors to comply with these provisions.

13.13    Third Party Beneficiaries

Except those parties specifically identified as third party beneficiaries herein, there are no third party beneficiaries to this Agreement.

13.14    California License Law

CONTRACTORS ARE REQUIRED BY LAW TO BE LICENSED AND REGULATED BY THE CONTRACTORS' STATE LICENSE BOARD WHICH HAS JURISDICTION TO INVESTIGATE COMPLAINTS AGAINST CONTRACTORS IF A COMPLAINT REGARDING A PATENT ACT OR OMISSION IS FILED WITHIN FOUR YEARS OF THE DATE OF THE ALLEGED VIOLATION. A COMPLAINT REGARDING A LATENT ACT OR OMISSION PERTAINING TO STRUCTURAL DEFECTS MUST BE FILED WITHIN 10 YEARS OF THE DATE OF THE ALLEGED VIOLATION. ANY QUESTIONS CONCERNING A CONTRACTOR MAY BE REFERRED TO THE REGISTRAR, CONTRACTORS' STATE LICENSE BOARD, P.O. BOX 26000, SACRAMENTO, CALIFORNIA 95826.

Owner's California License No. _____

_fmv_ Contractor's Initials          Page 17 of 61          _X_ Owner's Initials

Contractor's California License No. 572217

OWNER

CONTRACTOR

35-0359478

Federal I.D. No.

BARRATT AMERICAN INCORPORATED

BY: _____

TITLE: Walter Fritz, VP of Construction

BY: _____

TITLE: Scott Kube, Director of Construction

_____

WHILLOCK CONTRACTING, INC.

BY: _____

TITLE: _____

BY: _____

TITLE: _____

## Exhibit "A"

### Schedule Of Plans and Specifications

The provisions ("Provision") of this schedule of Plans and Specifications, and the addendum, shall prevail over and supersede all portions of the printed agreement (with Exhibits), and amended, to the extent the provisions are inconsistent or conflict with, or otherwise are not in accordance with the agreement.

1. Contractor agrees to provide all necessary labor, material, equipment, services, and competent supervision to complete the installation of all Work in strict compliance with the plans, details and specifications, prepared by, plans dated. Contractor shall comply with all applicable codes and requirements of the governmental agencies having jurisdiction thereof.

2. Contractor shall guarantee to Owner that sufficient labor and material shall be readily available to commence and complete all assigned Work as scheduled by the Project Superintendent.

3. Any deviations from or discrepancies to the plans, specifications, schedule and/or submittal requirements shall be brought to the immediate attention of the Owner's Project Superintendent with sufficient details to permit proper analysis. This shall be accomplished prior to the continuation or performance of any additional Work.

4. Temporary electrical power, for construction use by all Contractors, will be provided by Barratt American Incorporated to central locations as selected by Barratt American Incorporated. Distribution of power from these locations to the area required will be the responsibility of the Contractors.

5. No extras will be paid except those specifically resulting from changes and then only when brought to the immediate attention of the Owners' Project Manager and approved in advance. Contractor must obtain prior approval and necessary paperwork from the Project Manager.

6. Contractor agrees that there shall be no parking of construction vehicles on finished lots, finished driveways, or in garages.

7. Contractor is advised that the drinking of alcoholic beverages or the use of any controlled or illegal substances or drugs on or in the vicinity of a Barratt American Incorporated project is strictly prohibited and could result in the cancellation of this Agreement. Due to insurance considerations, children and pets are not permitted on construction sites.

8. All Work performed shall be per Plans and Specifications provided and in strict accordance with the requirements of the applicable county, city, or other governmental agency having jurisdiction thereof. Contractor agrees that approval by such agencies will not necessarily constitute acceptance of the Work by the Owner and the Owner's Project Superintendent must accept all products and workmanship.

9. No Work is to be done or material ordered on behalf of Barratt without proper direction and scheduling by Barratt's Project Superintendent.

10. Contractor to provide copy of State of California Contractors license, applicable city license, and be an active BIA member.

11. The Contractor shall be responsible for all payroll taxes, Workers Compensation Benefits for his employees. The Contractor shall also provide public liability insurance as herein provided for the operations of the Work and Contractor relieves Owner of all liability for those coverage's insofar as Contractor's Work is concerned.

12. Contractor is aware of the applicable state and federal safety codes and regulations (CAL/OSHA & OSHA) and agrees to indemnify, defend and hold harmless the Owner and their agents and employees from any claims or fines or other damage which may arise as a result of the failure of the Contractor, its agents or employees to comply with these rules, regulations and codes.

_TW_  Contractor's Initials                    Page 19 of 61                    _K_  Owner's Initials

## Exhibit "A"

### Schedule Of Plans and Specifications – cont.

13. Contractor shall insure that all assigned Work will be performed in a professional workmanlike manner by skilled mechanics and or sufficient quality to pass inspections by applicable authorities be it local, federal, architectural, engineering and/or builder. Any one of these above named inspection entities may perform such inspections at any time during the course of construction. Any corrections and/or alterations that become necessary to correct or enhance subsequent building quality will be acted upon by the Owner immediately upon notification.

14. ~~Contractor shall guarantee all Work performed under this contract for a period of one (1) year, which shall commence upon the builder filing the final Notice of Completion. During this time period, the Contractor shall be responsible for any reasonable pick-up deemed necessary by the builder and shall respond to complete such Work within two (2) days after notification. Should the Contractor fail to comply and respond accordingly, the Owner may order such Work to be performed by an outside source and shall hold the Contractor liable for all costs incurred.~~

15. ~~Contractor hereby agrees to conduct all Work in conformance with the approved plans, specifications, the Uniform Building Code and any published manufacturer's requirements for handling and installation of materials. Contractor understands that periodic random inspections will be carried out by outside inspection services. Any deviations or defects noted by the inspectors are required to be corrected immediately upon notification by the Project Superintendent. Furthermore, since only a random sampling of the Units will be inspected, all other buildings/Units are to be reviewed by Contractor to ensure that any similar deviations that may be present are also corrected.~~

16. ~~Contractor will be required to certify that all items noted on the inspectors correction list that pertain to Contractor have been corrected in accordance with the approved plans, specifications, applicable UBC, and published manufacturers requirements. Barratt American will forward to Contractor certification documents that must be signed by an authorized agent, and returned within 72 hours of the completion of the corrections. If Contractor fails to return the documents promptly, the account will be placed on hold and no further invoices will be processed until the documents are accounted for.~~

17. ~~If subsequent inspections continue to reveal the same defects, or consistent lack of attention to workmanship, Contractor may be held responsible for lost production time and the expense of the inspection. Gross negligence will be grounds for termination of this Agreement.~~

ATTACHMENT "A-1"
DOCUMENT LIST

The Contract Agreement includes all contract documents.  Contractor may not receive all documents, however, all documents are available for review at Barratt American's office and copies of any documents can be obtained by written request. Documents include:

- Storm Water Pollution Prevention Plan (SWPPP) prepared by Project Design Consultants dated September 2005.

- ~~SDGE~~            ~~Relocate RFS 2" Steele Main dated 3/20/06~~

- ~~Eiler~~           ~~Acoustical Analysis Report dated 1/13/06~~

- PDC              Project Design Consultants hired Underground Utilities Solutions who prepared a "Pothole Summary" Report dated 1/24/06

- Geocon           Phase 1 Environmental Site Assessment and Asbestos / Lead Survey dated 6/9/04

- Geocon           Geotechnical Investigation prepared for JJB Investments dated 10/25/04

- ~~Power Plus~~      ~~Dry Utility dated 5/18/06~~

**Contract Document Copies**
The Contractor is responsible to purchase all and maintain sufficient copies of contract documents required for the fully coordinated execution of this scope of work.  All Contractor field operations must have a current updated set of construction drawings available at the location of the work.

**Drawing Discrepancies**
Should Contractor find discrepancies in, or omission from, the drawings or documents, or should they be in doubt as to their meaning, they shall contain clarification from Barratt American's authorized representative before proceeding with any affected work.  All clarification requests shall be in writing on RFI Form or similar format.

ARCHITECTURAL DRAWINGS

| Drawing Number Consultant | Title KTGY | Description | Date |
|---|---|---|---|
| ~~T-1~~ | ~~Title Sheet~~ | ~~Delta 3 Client Revision~~ | ~~07/14/06~~ |
| ~~A-0.1~~ | ~~Architectural Site Plan~~ | ~~Delta 3 Client Revision~~ | ~~04/20/06~~ |
| ~~A-0.2~~ | ~~Disabled Access Notes~~ | ~~Delta 3 Client Revision~~ | ~~04/20/06~~ |
| ~~A-0.3~~ | ~~Disabled Access Details~~ | ~~Delta 3 Client Revision~~ | ~~04/20/06~~ |
| ~~A-0.4~~ | ~~General Notes~~ | ~~Delta 3 Client Revision~~ | ~~04/20/06~~ |
| ~~A-0.5~~ | ~~General Notes~~ | ~~Delta 3 Client Revision~~ | ~~04/20/06~~ |
| ~~A-1~~ | ~~Plan 1 and 3 Floor Plans~~ | ~~Delta 3 Client Revision~~ | ~~7/14/06~~ |
| ~~A-1.1~~ | ~~Plan 1 and 3 Floor Plans~~ | ~~Delta 3 Client Revision~~ | ~~7/14/06~~ |
| ~~A-1.2~~ | ~~Plan 3 Floor Plans~~ | ~~Delta 3 Client Revision~~ | ~~7/14/06~~ |
| ~~A-1.2A~~ | ~~Plan 3 Floor Plans~~ | ~~Delta 3 Client Revision~~ | ~~7/14/06~~ |
| ~~A-1.3~~ | ~~Plan 3 Floor Plans~~ | ~~Delta 3 Client Revision~~ | ~~7/14/06~~ |
| ~~A-2~~ | ~~Plan 2 Floor Plans~~ | ~~Delta 3 Client Revision~~ | ~~7/14/06~~ |
| ~~A-2.1~~ | ~~Plan 2 Floor Plans~~ | ~~Delta 3 Client Revision~~ | ~~7/14/06~~ |
| ~~A-3~~ | ~~Exit Stair 1 Stair Plans and Section~~ | ~~Delta 3 Client Revision~~ | ~~7/14/06~~ |
| ~~A-4~~ | ~~Exit Stair 2 and Plan 3 Stair Plans and Section~~ | ~~Delta 3 Client Revision~~ | ~~03/03/06~~ |
| ~~A-5~~ | ~~Plan 1 Stair Plans and Section~~ | ~~Delta 3 Client Revision~~ | ~~7/14/06~~ |
| ~~A-6~~ | ~~Plan 3A, 3C and 3D Stair Plans and Section~~ | ~~Delta 3 Client Revision~~ | ~~7/14/06~~ |
| ~~A-7~~ | ~~Plan 3B Stair Plans and Section~~ | ~~Delta 3 Client Revision~~ | ~~7/14/06~~ |
| ~~A-8~~ | ~~Plan 3 Stair Plans and Section~~ | ~~Delta 3 Client Revision~~ | ~~03/03/06~~ |

_Contractor's Initials_                Page 21 of 61                _Owner's Initials_

Case 08-13249-LA7    Claim 87-1 Part 4    Filed 03/06/09    Desc  addtl pages to proof of
claim  Pg. 2 of 10

ATTACHMENT " A 1"
DOCUMENT LIST CONT.

| | | | |
|---|---|---|---|
| A-9 | Plan 2A & 2C Stair Plans and Section | Delta 3 Client Revision | 7/14/06 |
| A-10 | Plan 2B Stair Plans and Section | Delta 3 Client Revision | 7/14/06 |
| A-11 | Building Sections | Delta 3 Client Revision | 7/14/06 |
| A-12 | Building Sections | Delta 3 Client Revision | 03/03/06 |
| A-13 | Door / Window and Finish Schedules | Delta 3 Client Revision | 7/14/06 |
| A-14 | Interior Elevations | Delta 3 Client Revision | 7/14/06 |
| A-15 | Interior Elevations | Delta 3 Client Revision | 7/14/06 |
| AA-1 | Building "A" Composite Floor Plans | Delta 3 Client Revision | 7/14/06 |
| AA-1.1 | Sales Office Floor Plan | Delta 3 Client Revision | 7/14/06 |
| AA-2 | Building "A" Composite Floor Plans | Delta 3 Client Revision | 7/14/06 |
| AA-3 | Building "A" Composite Roof Plan | Delta 3 Client Revision | 7/14/06 |
| AA-4 | Building A Exterior Elevations | Delta 3 Client Revision | 7/14/06 |
| AB-1 | Building "B" Composite Floor Plans | Delta 3 Client Revision | 7/14/06 |
| AB-2 | Building "B" Composite Floor Plans | Delta 3 Client Revision | 7/14/06 |
| AB-3 | Building "B" Composite Roof Plan | Delta 3 Client Revision | 7/14/06 |
| AB-4 | Building "B" Exterior Elevations | Delta 3 Client Revision | 7/14/06 |
| AC-1 | Building "C" Composite Floor Plans | Delta 3 Client Revision | 7/14/06 |
| AC-2 | Building "C" Composite Floor Plans | Delta 3 Client Revision | 7/14/06 |
| AC-3 | Building "C" Composite Roof Plan | Delta 3 Client Revision | 7/14/06 |
| AC-4 | Building C Exterior Elevations | Delta 3 Client Revision | 7/14/06 |
| AD-1 | Building "D" Composite Floor Plans | Delta 3 Client Revision | 7/14/06 |
| AD-2 | Building "D" Composite Floor Plans | Delta 3 Client Revision | 7/14/06 |
| AD-3 | Building "D" Composite Roof Plan | Delta 3 Client Revision | 7/14/06 |
| AD-4 | Building "D" Exterior Elevations | Delta 3 Client Revision | 7/14/06 |
| D-1 | Wall & Floor Assembly Details | Delta 3 Client Revision | 03/20/06 |
| D-2 | Wall & Floor Assembly Details | Delta 3 Client Revision | 7/14/06 |
| D-3 | Architectural Details | Delta 3 Client Revision | 7/14/06 |
| D-4 | Architectural Details | Delta 3 Client Revision | XX/XX/06 |
| D-4.1 | Architectural Details | Delta 3 Client Revision | Delta 3 (not dated) |
| D-5 | Architectural Details | Delta 3 Client Revision | 7/14/06 |
| D-6 | Architectural Details | | |

**PRECISE GRADING**

| Drawing Number | Title | Description | Date |
|---|---|---|---|
| Consultant | **Project Design Consultants** | | |
| C-1 | Precise Grading [GP-2064] | Included w/ client revision | 3/3/06 |
| C-2 | Precise Grading [GP-2064] | Included w/ client revision | 3/3/06 |
| C-3 | Precise Grading [GP-2064] | Included w/ client revision | 3/3/06 |
| C-4 | Precise Grading [GP-2064] | Included w/ client revision | 3/3/06 |
| C-5 | Precise Grading [GP-2064] | Included w/ client revision | 3/3/06 |
| C-6 | Precise Grading [GP-2064] | Included w/ client revision | 3/3/06 |
| C-7 | Precise Grading [GP-2064] | Included w/ client revision | 3/3/06 |
| C-8 | Precise Grading [GP-2064] | Included w/ client revision | 3/3/06 |
| C-9 | Precise Grading [GP-2064] | Included w/ client revision | 3/3/06 |
| C-10 | Precise Grading [GP-2064] | Included w/ client revision | 3/3/06 |
| C-11 | Precise Grading [GP-2064] | Included w/ client revision | 3/3/06 |
| C-12 | Precise Grading [GP-2064] | Included w/ client revision | 3/3/06 |
| C-13 | Precise Grading [P-2472] | Included w/ client revision | 3/3/06 |
| C-14 | Precise Grading [P-2472] | Included w/ client revision | 3/3/06 |
| C-15 | Precise Grading [P-2472] | Included w/ client revision | 3/3/06 |
| C-16 | Precise Grading [P-2472] | Included w/ client revision | 3/3/06 |
| C-17 | Precise Grading [P-2472] | Included w/ client revision | 3/3/06 |
| C-18 | Precise Grading [P-2472] | Included w/ client revision | 3/3/06 |
| C-19 | Precise Grading [P-2472] | Included w/ client revision | 3/3/06 |
| C-20 | Precise Grading [P-2472] | Included w/ client revision | 3/3/06 |
| C-21 | Precise Grading [P-2472] | Included w/ client revision | 3/3/06 |

Contractor's Initials                Page 22 of 61                Owner's Initials



## ATTACHMENT " A-1"
## DOCUMENT LIST CONT.

| | | | |
|---|---|---|---|
| C-22 | Precise Grading [P-2472] | Included w/ client revision | 3/3/06 |
| C-23 | Precise Grading [P-2472] | Included w/ client revision | 3/3/06 |
| C-24 | Precise Grading [P-2472] | Included w/ client revision | 3/3/06 |

### IMPROVEMENT PLANS

| Drawing Number | Title | Description | DATE |
|---|---|---|---|
| Consultant | Project Design Consultants | | |
| P-2472 -1 of 14 | Improvement Plans | Included w/ client revision | 6/15/06 |
| P-2472 - 2 of 14 | Improvement Plans | Included w/ client revision | 6/15/06 |
| P-2472 - 3 of 14 | S. Orange St. & 2nd Ave. | Included w/ client revision | 6/15/06 |
| P-2472 - 4 of 14 | S. Orange St. & 3rd Ave. | Included w/ client revision | 6/15/06 |
| P-2472 - 5 of 14 | Centre City Pkwy & 2nd Ave. | Included w/ client revision | 6/15/06 |
| P-2472 - 6 of 14 | West 2nd Ave @ CC Pkwy to Orange St. | Included w/ client revision | 6/15/06 |
| P-2472 - 7 of 14 | Marquis Glen (PVT) | Included w/ client revision | 6/15/06 |
| P-2472 - 8 of 14 | City Glen (PVT) | Included w/ client revision | 6/15/06 |
| P-2472 - 9 of 14 | Alley between Orange St & CC Pkwy, North of 4th Ave. | Included w/ client revision | 6/15/06 |
| 2472 - 10 of 14 | Royal Glen (PVT) | Included w/ client revision | 6/15/06 |
| P-2472 - 11 of 14 | Presidio Glen (PVT) | Included w/ client revision | 6/15/06 |
| P-2472 - 12 of 14 | Sewer Lateral Table & Cross Sections for Orange St., CC Pkwy, 2nd Ave & Alley | Included w/ client revision | 6/15/06 |
| P-2472 - 13 of 14 | Construction Notes | Included w/ client revision | 6/15/06 |
| P-2472 – 14 of 14 | Paving and Striping | Included w/ client revision | 6/15/06 |

### PRECISE GRADING

| Drawing Number | Title | Description | Date |
|---|---|---|---|
| Consultant | Project Design Consultants | | |
| GP-2064 – 1 of 11 | Precise Grading Plan . | Included w/ client revision | 6/19/06 |
| GP-2064 – 2 of 11 | Precise Grading Plan | Included w/ client revision | 6/19/06 |
| GP-2064 – 3 of 11 | Precise Grading Plan | Included w/ client revision | 6/19/06 |
| GP-2064 – 4 of 11 | Precise Grading Plan | Included w/ client revision | 6/19/06 |
| GP-2064 – 5 of 11 | Precise Grading Plan | Included w/ client revision | 6/19/06 |
| GP-2064 – 6 of 11 | Precise Grading Plan | Included w/ client revision | 6/19/06 |
| GP-2064 – 7 of 11 | Precise Grading Plan | Included w/ client revision | 6/19/06 |
| GP-2064 – 8 of 11 | Precise Grading Plan | Included w/ client revision | 6/19/06 |
| GP-2064 – 9 of 11 | Precise Grading Plan | Included w/ client revision | 6/19/06 |
| GP-2064 – 10 of 11 | Precise Grading Plan | Included w/ client revision | 6/19/06 |
| GP-2064 – 11 of 11 | Precise Grading Plan | Included w/ client revision | 6/19/06 |

### PRECISE GRADING

| Drawing Number | Title | | Date |
|---|---|---|---|
| Consultant | ESI / FMS | | - |
| S1 | Foundation Plans | Delta 2 Client Revision | 04/13/06 |
| S2 | Framing Plans Plans 1 & 3 | Delta 2 Client Revision | 04/13/06 |
| S3 | Framing Plans Plans 1& 3 End Units and Addendas | Delta 2 Client Revision | 04/13/06 |
| S4 | Framing Plans Plan 2 | Delta 2 Client Revision | 04/13/06 |
| SGN | Structural General Notes | Delta 2 Client Revision | 04/13/06 |
| FD1 | Foundation Details | Delta 2 Client Revision | 04/13/06 |
| SD1 | Structural Details | Delta 2 Client Revision | 04/13/06 |
| SD2 | Structural Details | Delta 2 Client Revision | 04/13/06 |

| Consultant | Hardy Frames, Inc. | | - |
|---|---|---|---|
| H-1 | Typical Installation Details | Delta X | 11/17/03 |
| H-2 | Typical Installation Details | | 08/15/03 |
| H-3 | Typical Installation Details | | 08/15/03 |

**ATTACHMENT " A-1"**
**DOCUMENT LIST** CONT.

**PLUMBING**

| Drawing Number | Title | | Date |
|---|---|---|---|
| Consultant | Toft Wolff Farrow Inc. | | - |
| P0.1 | Plumbing Cover Sheet | Bid Set | 07/18/06 |
| P1.0 | Plumbing Site Plan | Bid Set | 07/18/06 |
| P2.11 | Building A Plumbing Plan | Bid Set | 07/18/06 |
| P2.12 | Building A Plumbing Plan | Bid Set | 07/18/06 |
| P2.21 | Building B Plumbing Plan | Bid Set | 07/18/06 |
| P2.23 | Building B Plumbing Plan | Bid Set | 07/18/06 |
| P2.31 | Building C Plumbing Plan | Bid Set | 07/18/06 |
| P2.32 | Building C Plumbing Plan | Bid Set | 07/18/06 |
| P2.33 | Building C Plumbing Roof Plan | Bid Set | 07/18/06 |
| P2.41 | Building D Plumbing Plan | Bid Set | 07/18/06 |
| P2.42 | Building D Plumbing Plan | Bid Set | 07/18/06 |
| P2.43 | Building D Plumbing Roof Plan | Bid Set | 07/18/06 |
| P3.1 | Unit 1 & 3 Plumbing Plan | Bid Set | 07/18/06 |
| P3.2 | Unit Plan 2 Plumbing Plan delta 1 & Sales Office | Bid Set | 07/18/06 |
| P3.3 | Unit Plan 1, 2 & 3 Plumbing Plan (Below Flood Rim Elevator | Bid Set | 07/18/06 |
| P4.1 | Riser Diagram | Bid Set | 07/18/06 |
| P4.2 | Riser Diagram | Bid Set | 07/18/06 |

**MECHANICAL**

| Consultant | Toft Wolff Farrow Inc. | | - |
|---|---|---|---|
| M0.1 | Mechanical Cover Sheet | Bid Set | 07/18/06 |
| M0.2 | Mechanical Details | Bid Set | 07/18/06 |
| M0.3 | Mechanical Details | Bid Set | 07/18/06 |
| M-2.1 | Building A Mechanical Title – 24 and Roof Plan | Bid Set | 07/18/06 |
| M-2.2 | Building B Mechanical Title – 24 and Roof Plan | Bid Set | 07/18/06 |
| M-2.3 | Building C Mechanical and 1st Floor and Roof Plans | Bid Set | 07/18/06 |
| M-2.4 | Building D Mechanical 1st Floor and Roof Plans | Bid Set | 07/18/06 |
| M-3.1 | Plan 1 & 3 Mechanical Floor Plans & Sales Office | Bid Set | 07/18/06 |
| M-3.2 | Plan 2 Mechanical Floor Plans | Bid Set | 07/18/06 |
| M-3.3 | Plan 3 Mechanical Floor Plans | Bid Set | 07/18/06 |

**ELECTRICAL**

| Consultant | Toft Wolff Farrow Inc. | | |
|---|---|---|---|
| E0.1 | General Notes, Abbreviations, Luminaire Schedule & Symbols | Bid Set | 07/18/06 |
| E0.2 | Single Line Diagram, Load Calculations & Elevations | Bid Set | 07/18/06 |
| E0.3 | Single Line Diagram, Load Calculations & Elevations | Bid Set | 07/18/06 |
| E1.0 | Electrical Site Plan | Bid Set | 07/18/06 |
| E1.0A | Electrical Site Plan Photometric Only | Bid Set | 07/18/06 |
| EA-2.1 | Building A Electrical 1st & 2nd Floor Plans | Bid Set | 07/18/06 |
| EB-2.1 | Building B Electrical 1st & 2nd Floor Plans | Bid Set | 07/18/06 |
| EB-2.2 | Building B Electrical 3rd, 4th & Roof Floor Plans | Bid Set | 07/18/06 |
| EC-2.1 | Building C Electrical 1st & 2nd Floor Plans | Bid Set | 07/18/06 |
| EC-2.2 | Building C Electrical 3rd, 4th & Roof Floor Plans | Bid Set | 07/18/06 |
| ED-2.1 | Building D Electrical 1st & 2nd Floor Plans | Bid Set | 07/18/06 |
| ED-2.2 | Building D Electrical 3rd, 4th & Roof Floor Plans | Bid Set | 07/18/06 |
| E-3.1 | Plan 1 & 3 Electrical Floor Plans | Bid Set | 07/18/06 |
| E-3.2 | Plan 2 Electrical Floor Plans | Bid Set | 07/18/06 |
| E-3.3 | Plan 3 Electrical Floor Plans | Bid Set | 07/18/06 |
| E-3.4 | Sales Office Electrical Floor Plan Bldg. 2 & T24 | Bid Set | 07/18/06 |
| E3.5 | Energy Compliance Forms | Bid Set | 07/18/06 |

TMV Contractor's Initials          Page 24 of 61          Owner's Initials

## ATTACHMENT " A-1"
## DOCUMENT LIST cont.

### LANDSCAPING

| Drawing Number | Title | | Date |
|---|---|---|---|
| Consultant | Gillespie Design Group Inc. | | |
| L-1 | Title Sheet | 2ⁿᵈ Plan Check | 05/26/06 |
| LC-1 | Landscape Construction Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LC-2 | Landscape Construction Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LC-3 | Landscape Construction Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LC-4 | Landscape Construction Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LC-5 | Landscape Construction Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LC-6 | Landscape Construction Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LC-7 | Landscape Construction Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LC-8 | Landscape Construction Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LC-9 | Landscape Construction Details | 2ⁿᵈ Plan Check | 05/26/06 |
| LC-10 | Landscape Construction Details | 2ⁿᵈ Plan Check | 05/26/06 |
| LC-11 | Landscape Construction Details | 2ⁿᵈ Plan Check | 05/26/06 |
| LC-12 | Construction Notes and Specifications | 2ⁿᵈ Plan Check | 05/26/06 |

### LIGHTING

| Drawing Number | Title | | Date |
|---|---|---|---|
| Consultant | Butsko | | |
| E-1 | Site Lighting Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| E-2 | Site Lighting Construction Details | 2ⁿᵈ Plan Check | 05/26/06 |
| E-3 | Site Lighting Installation Details | 2ⁿᵈ Plan Check | 05/26/06 |
| E-4 | Site Lighting Specifications, Notes | 2ⁿᵈ Plan Check | 05/26/06 |
| E-5 | Site Lighting Specifications, Notes | 2ⁿᵈ Plan Check | 05/26/06 |

### LANDSCAPING

| Drawing Number | Title | | Date |
|---|---|---|---|
| Consultant | Gillespie Design Group Inc. | | |
| LI-1 | Landscape Irrigation Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LI-2 | Landscape Irrigation Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LI-3 | Landscape Irrigation Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LI-4 | Landscape Irrigation Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LI-5 | Landscape Irrigation Legend and Notes | 2ⁿᵈ Plan Check | 05/26/06 |
| LI-6 | Landscape Irrigation Details | 2ⁿᵈ Plan Check | 05/26/06 |
| LI-7 | Landscape Irrigation Details | 2ⁿᵈ Plan Check | 05/26/06 |
| LI-8 | Landscape Irrigation Specifications | 2ⁿᵈ Plan Check | 05/26/06 |
| LI-9 | Landscape Irrigation Specifications | 2ⁿᵈ Plan Check | 05/26/06 |
| LP-1 | Trees, Vines, and Groundcover Planting Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LP-2 | Trees, Vines, and Groundcover Planting Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LP-3 | Trees, Vines, and Groundcover Planting Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LP-4 | Trees, Vines, and Groundcover Planting Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LP-5 | Shrub Planting Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LP-6 | Shrub Planting Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LP-7 | Shrub Planting Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LP-8 | Shrub Planting Plan | 2ⁿᵈ Plan Check | 05/26/06 |
| LP-9 | Landscape Planting Details | 2ⁿᵈ Plan Check | 05/26/06 |
| LP-10 | Landscape Planting Legend and Notes | 2ⁿᵈ Plan Check | 05/26/06 |

### DEMOLITION PLAN

| Drawing Number | Title | | Date |
|---|---|---|---|
| Consultant | Project Design Consultants | | |
| Sheet 1 of 2 | Demolition Plan | | 03/03/06 |
| Sheet 2 of 2 | Erosion Control Plan | | 03/03/06 |

| Consultant | PDC | | |
|---|---|---|---|
| P-2472 Sheet 1-1 | Escondido Tract Centre City Pkwy & 2ⁿᵈ Ave. (Utility Coordination) | | 05/08/06 |

Exhibit "B"

## Contract Recapitulation, Alternates, Unit Prices & Rates

### (Cost of the Work)

PO # 715170

| Item | CC | Description | Qty | UM | Unit Price | Amount |
|------|---------|------------|-----|----|-----------|-------------|
| 1 | 02-2100 | Excavation | 1 | LS | 497352.00 | $497,352.00 |
| | | | | | TOTAL | $497,352.00 |

ATTACH COPY OF THIS EXHIBIT WITH INVOICES.

A.  Contract Recapitulation:

    1.  Base Contract Value - Earthwork      $266,241.00

    2.  Base Contract Value – Demolition / Abatement / Erosion Control    $200,981.00

    3.  Add – Public right of way demolition    $18,952.00

    4.  Add – Demo Alley Street AC – 6" AC    $5,775.00

    5.  Add – Grade Alley    $5,403.00

    ~~6.  Add Layout by Contractor~~    ~~$0.00~~

    ~~7.  Deduct cleanup services provided by Barrett~~    ~~$0.00~~

    Total Contract Amount    $497,352.00

B.  Alternates:

    ~~1.  Grade Offsite Curb & Gutter~~    ~~$23,500.00~~

C.  Unit Prices:

    1.    $

    2.    $

D.  Labor Rates for change order purposes including all insurance, taxes, small tools and incidentals but excluding overhead and profit mark-up:

    1.  Labor -    $42.00 / hour

E.  Change Order Mark-Ups:  15%

F.  Equipment Rates:

    1.  Equipment rates for change order purposes.

G.  Payment Schedule:

    1.  None – To Be Progress Billed

_tmv_ Contractor's Initials      Page 26 of 61      Owner's Initials

## Exhibit "B-1"

### Pricing and Billing Procedures

**A.  Progress Payments**

All billings for work performed during a calendar month shall be made on Barratt American, Inc. - Urban Division's standard "Progress Payment Request" form (Exhibit B-2) and be accompanied with the appropriate lien release.  The billing shall be in Barratt Urban Division's office no later than the 25th of the month or the last working day prior to the 25th unless an earlier date is specified elsewhere.  NO OTHER FORM OF PAYMENT REQUEST WILL BE ACCEPTED.  Payment requests received after the due date will be processed the following month.  (See also Article 7 of the Contract)

**B.  Lien Release**

The following lien releases will be required:

a.  "Conditional Waiver and Release Upon Progress Payment" form (Exhibit E-2) is to be submitted with each progress payment request except for the final request.

b.  "Unconditional Waiver and Release Upon Progress Payment" form (Exhibit E-3) is to be submitted after receipt of each progress payment except for the final payment.

c.  "Conditional Waiver and Release Upon Final Payment" form (Exhibit E-4) and "Guarantee and Warranty" form (Exhibit E-6) are to be submitted with the final payment request.

d.  "Unconditional Waiver and Release Upon Final Payment" form (Exhibit E-5) is to be submitted upon receipt of final payment.

NOTE:    Prior to release of any progress payment or final payment to Contractor, "Unconditional Waiver and Release Upon Progress Payment" or "Unconditional Waiver and Release Upon Final Payment" lien release forms must be submitted for all sub-subcontractors and suppliers who have filed preliminary notices.

**C.  Retention**

There will be 10% retention of gross billings withheld during the progress of the work.  Upon completion and acceptance of the work, including all close-out documents, retention can be released.

**D.  Contract Cost Breakdown**

1.    A "Subcontract Schedule of Values" (AIA G703, attached, or Barratt American, Inc. - Urban Division accepted facsimile) is to be filled out and returned to Barratt American, Inc. - Urban Division with the signed agreement. A copy of this schedule, with additions and modifications to reflect changes to the scope of work must be submitted with each progress billing.  The schedule is to clearly break down each work activity, by floor, which will be performing on this project.

2.    A Line Item titled "Close-out " is to be included and carry a value of 5% of the subcontract amount. A Line Item titled "Record Document " is to be included and carry a value of 5% of the subcontract amount.  Subcontractor is to submit proposed format for Owner and Barratt American, Inc. - Urban Builders acceptance no later than one month prior to first Progress Payment Request.

**E.  Insurance and Bonds**

Payments cannot be made to Subcontractor unless properly executed Insurance Certificate, and Payment and Performance Bonds (if applicable) have been submitted on Barratt American, Inc. -  Urban Divisions' standard forms and have been kept current and in good standing.

**F.  Stored Materials**

Payment of stored materials will be considered on an individual basis and is subject to Barratt's approval.  Payment for materials not stored at the jobsite will be considered if request is accompanied by evidence of insurance and bonding, and California Uniform Commercial Code Form UCC.1 for materials totaling $100,000 and above in value or a Bill of Sale for those materials valued under $100,000.  Furnish copies of shipping tags for stored materials as back up to the amount of your request.  Barratt Urban Division may choose to inspect the stored materials as a payment review step.

BLM _____

# PROGRESS PAYMENT REQUEST

To:    Barratt Urban Division

Billing Date: _____
Job Name: _____
Location: _____
Contract No.: _____
Vendor No.: _____
Contractor's Job No.: _____
Contractor's App. No.: _____

From: _____
_____
_____

## CONTRACT INFORMATION

Base Contract Amount:                                          $ _____

Barratt American, Inc. Issued Change Order(s) through No. _____:    $ _____

Total Contract to Date:                                        $ _____ ❖

## BILLING INFORMATION

This billing is for materials and/or work performed through: _____ , 20___ .

| | | | | |
|---|---|---|---|---|
| Base Contract: | $ _____ | _____ % pct | $ _____ |
| Barratt American, Inc. Order #1: | $ _____ | _____ % pct | $ _____ |
| Barratt American, Inc. Order #2: | $ _____ | _____ % pct | $ _____ |
| Barratt American, Inc. Order #3: | $ _____ | _____ % pct | $ _____ |
| Barratt American, Inc. Order #4: | $ _____ | _____ % pct | $ _____ |
| Barratt American, Inc. Order #5: | $ _____ | _____ % pct | $ _____ |
| Barratt American, Inc. Order #6: | $ _____ | _____ % pct | $ _____ |
| Barratt American, Inc. Order #7: | $ _____ | _____ % pct | $ _____ |
| Barratt American, Inc. Order #8: | $ _____ | _____ % pct | $ _____ |
| Continuation Sheet: | $ _____ | _____ % pct | $ _____ |
| TOTALS: Contract: | $ _____ ❖ | _____ % pct | Billing: $ _____ |

These values must match ❖

| | |
|---|---|
| Barratt Urban Division Use Only: | Less: ___ 10 ___% Retention    $ _____ |
| Approvals: | Less:  Prior Billings (NET):    $ _____ |
| Superintendent _____ | Total Due This Request:    $ _____ |
| Project Manager _____ | |
| Billing # _____ | |

**IMPORTANT: The Conditional Waiver & Release Upon Progress Payment must be signed and attached.**

Exhibit B-2

Contractor's Initials                 Page 28 of 61                 Owner's Initials

BLI#

## PROGRESS PAYMENT REQUEST
## CHANGE ORDER CONTINUATION SHEET

To:    Barratt American, Inc.                    Billing Date:  _____

                                                Job Name:  _____

From:    _____            Billing Period.:  _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt Urban Change Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

Barratt American, Inc. Order # ____ : $_____    _____ % pct        $ _____

TOTALS:        Contract:        $ _____    _____ % pct    Billing:  $ _____

Exhibit B-3


Contractor's Initials


_____ Owner's Initials

# CONTINUATION SHEET

AIA DOCUMENT G703

AIA Document G702, APPLICATION AND CERTIFICATION FOR PAYMENT, containing
Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column 1 on Contracts where variable retainage for line items may apply.

PAGE   OF PAGE

APPLICATION NO:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO:

| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G÷C) | BALANCE TO (C−G) | RETAINAGE (IF VARIABLE RATE) |
| | | | FROM PREVIOUS APPLICATION (D + E) | THIS PERIOD | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | GRAND TOTALS | | | | | | | | |

User may obtain validation of this document by requesting of the license a completed AIA Document D401 – Certification of Document's Authenticity

AIA DOCUMENT G703 CONTINUATION SHEET FOR G702. 1992 EDITION AIA G3192

THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W. WASHINGTON, D.C. 20006-5321

Page 30 of 61

Contractor's Initials

EXHIBIT B-4
Owner's Initials

G703-1992

BLI# _____

## CONDITIONAL WAIVER AND RELEASE
## UPON PROGRESS PAYMENT

Upon receipt by the undersigned of a check from **Barratt American, Inc.** in the sum of

$ _____ payable _____
        (Amount of Check)                                          (Payee or Payees of Check)

and when the check has been properly endorsed and has been paid by the bank upon which it is drawn, this

document shall become effective to release any mechanic's lien, stop notice, or bond

right the undersigned has on the job of _____ located at
                                                  (Owner)

_____ to the following extent.  This release covers a progress
              (Job Description)

payment for labor, services, equipment, or material furnished to **Barratt American, Inc.** through

_____ only and does not cover any retention's retained before or after the
        (Date)

release date; extras furnished before the release date for which payment has not been received;

extras or items furnished after the release date.  Rights based upon work performed or items

furnished under a written change order which has been fully executed by the parties prior to the

release date are covered by this release unless specifically reserved by the claimant in this release.

This release of any mechanic's lien, stop notice, or bond right shall not otherwise affect the

contract rights, including rights between parties to the contract based upon a rescission,

abandonment, or breach of the contract, or the right of the undersigned to recover compensation for

furnished labor services, equipment, or material covered by this release if that furnished labor,

services, equipment or material was not compensated by the progress payment.  Before any

recipient of this document relies on it, said party should verify evidence of payment to the

undersigned.

Dated: _____

                              _____
                                (Company Name)

                              _____
                                (Signature)

                              _____
                                (Name)

                              _____
                                (Title)

Exhibit B-5

_____ Contractor's Initials                   Page 31 of 61                  _____ Owner's Initials

BLW _____

## UNCONDITIONAL WAIVER AND RELEASE
## UPON PROGRESS PAYMENT

The undersigned has been paid and has received a progress payment in the sum of $_____

(Amount of Check)

for labor, services, equipment, or material furnished to **Barratt American, Inc.** on the job of

_____ located at _____ and does hereby

(Owner)                                      (Job Description)

release any mechanics lien, stop notice, or bond right that the undersigned has on the above

referenced job to the following extent. This release covers a progress payment for labor, services,

equipment or material furnished to **Barratt American, Inc.** through_____

(Date)

only and does not cover any retention retained before or after the release date; extras furnished

before the release date for which payment has not been received; extras or items furnished after the

release date. Rights based upon work performed or items furnished under a written change order

which has been fully executed by the parties prior to the release date are covered unless specifically

reserved by the claimant in this release. This release of any mechanic's lien, stop notice, or bond

right shall not otherwise affect the contract rights, including rights between parties to the contract

based upon a rescission, abandonment, or breach of the contract, other right of the undersigned to

recover compensation for furnished labor, services, equipment, or material covered by this release

if that furnished labor, services, equipment or material was not compensated by the progress

payment.

Dated: _____          _____
                                                                            (Company Name)

                                                            _____
                                                                            (Signature)

                                                            _____
                                                                            (Name)

                                                            _____
                                                                            (Title)

**NOTICE:** This document waives rights unconditionally and states that you have been paid for
giving up those rights. This document is enforceable against you if you sign it, even if you have
not been paid. *If you have not been paid, use a conditional release form.*

**Exhibit B-6**

 Contractor's Initials          Page 32 of 61           Owner's Initials

BLI# _____

## CONDITIONAL WAIVER AND RELEASE
## UPON FINAL PAYMENT

Upon receipt by the undersigned of a check from Barratt American, Inc. in the sum of

$ _____ payable to _____ and when the
     (Amount of Check)                                        (Payee or Payees of Check)

check has been properly endorsed and has been paid by the bank upon which it is drawn, this

document shall become effective to release any mechanic's lien, stop notice, or bond right the

undersigned has on the job of _____ located at _____ .
                                       (Owner)                              (Job Description)

This release covers the final payment to the undersigned for all labor, services, equipment or

materials furnished on the job, except for disputed claims for additional work in the amount of

$ _____ . Before any recipient of this document relies on it, said party should verify

evidence of payment to the undersigned.

Dated: _____

_____
(Company Name)

_____
(Signature)

_____
(Name)

_____
(Title)

**Exhibit B-7**

BL#_____

# UNCONDITIONAL WAIVER AND RELEASE
## UPON FINAL PAYMENT

The undersigned has been paid in full for all labor, services, equipment or material furnished to

Barratt American, Inc. on the job of _____ located at

_____. and does hereby waive and release any right
          (Job Description)

to a mechanic's lien, stop notice, or any right against a labor and material bond on the job, except

for disputed claims for extra work in the amount of $_____.


Dated: _____          _____
                                             (Company Name)

                                             _____
                                             (Signature)

                                             _____
                                             (Name)

                                             _____
                                             (Title)


**NOTICE:** This document waives rights unconditionally and states that you have been paid
for giving up those rights.  This document is enforceable against you if you sign it, even if you
have not been paid.  If you have not been paid, use a conditional release form.


Exhibit B-8


Contractor's Initials                Page 34 of 61                Owner's Initials

**(TYPE ON CONTRACTOR'S LETTERHEAD)**

## GUARANTEE & WARRANTY

The undersigned is a subcontractor, materialman and/or supplier on the project known _____
_____, located at _____ pursuant to agreement with **Barratt
American, Inc. - Urban Division** dated _____, 20____, Subcontract Agreement
Number _____

The undersigned guarantees and warrants all materials and items furnished under this agreement to be in
strict conformance with the Contract Documents and agrees to remove and replace any non-conforming
items at his sole cost including, but not limited to, costs of correction, re-installation and repair of
adjacent work effected by such corrective work.

This Guarantee and Warranty is effective on the project's date of substantial completion, or such date as
specified in the Contract Documents.  This Guarantee and Warranty shall remain in effect for one year or
longer as specified in the Contract Documents.

The undersigned agrees to perform all guarantee/warranty work without any expenses whatever to the
Owner or General Contractor, ordinary wear and tear, and unusual abuse and neglect excepted.

In the event of failure to comply with the terms of this Guarantee and Warranty within ten (10) days after
notified in writing by Barratt Urban Division, the undersigned authorizes Barratt Urban Division to
proceed to have said non-conforming items repaired and made good at undersigned's expense.
Undersigned will honor and pay costs and charges therefrom upon demand, including attorney's fees and
costs of collection, if any.

This Guaranty and Warranty shall be binding on the heirs, executors, successors and assigns of the
undersigned.

**Start Date of Guarantee and Warranty:  [SUBSTANTIAL COMPLETION DATE]**

Date: _____          Countersigned: Material Manufacturer (If Applicable)

Company: _____          Company: _____

Signed: _____          Signed: _____

Name: _____          Name: _____

Title: _____          Title: _____

Phone No.: _____          Phone No.: _____

License No.: _____          License No.: _____

**Exhibit B-9**

_____ Contractor's Initials          Page 35 of 61          _____ Owner's Initials

Exhibit "C"

Project Construction Schedule



Contractor's Initials

Owner's Initials

## Exhibit "C-1"
### Project Schedule clarifications

THIS PROJECT CONSTRUCTION SCHEDULE IS PRELIMINARY AND IS INTENDED TO SHOW THE PROJECT DURATION AND GENERAL SEQUENCE OF ACTIVITIES.  THE PROJECT SCHEDULE MAY BE REVISED PRIOR TO START OF CONSTRUCTION OF THE AFFECTED AREA(S) TO REFINE AND ADD ACTIVITIES AS NEEDED.  CONTRACTOR IS TO CONFORM TO ALL SCHEDULES ISSUED.

#### TERMS AND CONDITIONS

1. TIME IS OF THE ESSENCE OF THIS AGREEMENT.  CONTRACTOR SHALL CONFORM TO THE PROGRESS SCHEDULE AND ALL REVISIONS OR CHANGES MADE THERETO.  CONTRACTOR SHALL PROSECUTE ITS WORK IN A PROMPT AND DILIGENT MANNER IN ACCORDANCE WITH PROGRESS SCHEDULE WITHOUT DELAYING OR HINDERING THE WORK OF OTHER CONTRACTORS.  CONTRACTOR SHALL COORDINATE THE WORK COVERED BY THIS AGREEMENT WITH THAT OF ALL OTHER CONTRACTORS, IN A MANNER THAT WILL FACILITATE THE EFFICIENT COMPLETION OF THE ENTIRE WORK.  IN THE EVENT CONTRACTOR FAILS TO MAINTAIN ITS PART OF THE SCHEDULE, CONTRACTOR SHALL, WITHOUT ADDITIONAL COMPENSATION, ACCELERATE THE WORK UNTIL WORK IS IN ACCORDANCE WITH SUCH SCHEDULE.  TIME AND ORDER IN WHICH VARIOUS PORTIONS OF THE WORK SHALL BE INSTALLED AND THE RELATIVE PRIORITY OF THE WORK SHALL BE COORDINATED WITH OTHER CONTRACTORS IN WEEKLY CONTRACTOR MEETINGS.  CONTRACTOR AGREES TO NOTIFY BARRATT AMERICAN IN WRITING WITHIN 48 HOURS, OF ANY DELAYS OR ANTICIPATED DELAYS IN THE PERFORMANCE OF THE WORK, AND TO STATE THE CAUSE OF SAID DELAYS.  IF BARRATT AMERICAN IS SO NOTIFIED, THEN, SHOULD THE CAUSE BE A CONDITION UPON WHICH BARRATT AMERICAN PERMITS THE EXTENSION OF TIME, CONTRACTOR WILL BE APPLIED FOR SUCH EXTENSION.

2. NO CLAIMS FOR ADDITIONAL COMPENSATION OR DAMAGES FOR DELAYS, INCLUDING, BUT NOT LIMITED TO, DELAYS BY SEPARATE CONTRACTORS, OR OWNER, SHALL BE RECOVERABLE FOR CONTRACTOR, AND THE ABOVE-MENTIONED EXTENSION OF TIME FOR COMPLETION SHALL BE THE SOLE REMEDY OF CONTRACTOR; PROVIDED, HOWEVER, THAT IN THE EVENT CONTRACTOR OBTAINS ADDITIONAL COMPENSATION FOR OWNER ON ACCOUNT OF SUCH DELAYS, CONTRACTOR SHALL BE ENTITLED TO SUCH.

3. IF CONTRACTOR SHOULD DEFAULT IN PERFORMANCE OF THE WORK OR OTHERWISE COMMIT ANY ACT WHICH CAUSES DELAY TO THE PRIME CONTRACT WORK, CONTRACTOR SHALL BE LIABLE FOR ALL LOSSES, COSTS, EXPENSES, LIABILITIES AND DAMAGES, INCLUDING CONSEQUENTIAL DAMAGES AND LIQUIDATED DAMAGES, OR FOR WHICH CONTRACTOR MAY BE LIABLE TO OWNER OR ANY OTHER PARTY BECAUSE OF CONTRACTOR'S DEFAULT.

4. CONTRACTOR AGREES TO SUBMIT ON A WEEKLY BASIS, AND AT THE TIME OF SUBMISSION OF PROGRESS PAYMENT REQUESTS, A REPORT, IN A FORM SATISFACTORY TO BARRATT AMERICAN, ITEMIZING ON A WEEKLY BASIS ACTUAL QUANTITIES OF WORK PERFORMED AND, ON A DAILY BASIS, MANPOWER AND EQUIPMENT EMPLOYED BY CONTRACTOR ON THE PROJECT.  IF CONTRACTOR IS BEHIND ON SCHEDULE, CONTRACTOR IS TO IDENTIFY THE REASONS, AND PROPOSE A PLAN TO GET BACK ON SCHEDULE.

5. CONTRACTOR SHALL SUBMIT UPDATED SCHEDULE FOR THEIR PORTION OF THE WORK.  ANY WORK THAT IS REQUIRED TO BE IN PLACE BEFORE CONTRACTOR'S WORK CAN START; CONTRACTOR SHALL NOTE THAT ACTIVITY IN THEIR SCHEDULE.

6. THE SCHEDULE IS A WORKING TOOL.  ALTHOUGH THE START DATE MAY FLUCTUATE, CONTRACTOR AGREES TO THE DURATIONS SET IN THE SCHEDULE. PROVIDE ADEQUATE MANPOWER TO MEET THE SCHEDULE REQUIREMENTS SO THAT SUFFICIENT MANPOWER IS ASSIGNED TO COMPLETE THE WORK IN A TIMELY MANNER AS IT BECOMES AVAILABLE.  WORK OVERTIME AS NEEDED TO MEET SCHEDULED ACTIVITY COMPLETIONS DATES.

_____ Contractor's Initials                   _____ Owner's Initials